UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK    **JUDGE ENGELMAYER**

ROBERT CREWE, on behalf of himself
and all others similarly situated

                Plaintiff,

Against

RICH DAD EDUCATION, LLC, RICH
GLOBAL, LLC, RICH DAD
OPERATING CO., LLC, CASHFLOW
TECHNOLOGIES, INC., TIGRENT INC.,
TIGRENT LEARNING INC., TIGRENT
BRANDS INC., and ROBERT
KIYOSAKI, an individual, and DOES 1
through 50, inclusive

                Defendants.

CASE NO. _____

CLASS ACTION COMPLAINT



Plaintiff Robert Crewe, ("Plaintiff"), by his attorneys, makes the following allegations

pursuant to the investigations of his counsel and based upon information and belief, except as to

the allegations specifically pertaining to himself and his counsel, which are based on personal

knowledge:

## NATURE OF THE ACTION

1.    Plaintiff paid Defendants $199 to attend a "Rich Dad™ Education Stock Success

3-day Training program" which was supposed to provide training and education in trading

stocks. Defendants described the program as follows:

> Your 3-Day STOCK SUCCESS training is designed to help you
> effectively pursue the many wealth-building opportunities
> provided by the stock and options market. You now have the
> entire Rich Dad Education team to share their knowledge and
> experience in the markets with you. They are here to help you turn
> your desire for more into a reality.
>
> Your 3-Day Training is comprehensive. It will cover everything
> from thinking like the rich think to developing a personal plan and

executing on that plan.

> WHAT YOU'LL LEARN AT THE STOCK SUCCESS TRAINING ... This
> intensive, 3-Day Training curriculum focuses on establishing you
> as an educated investor. ... By employing numerous strategies,
> you'll learn how you can create profit potential in every type of
> market. ... By raising your financial IQ, you'll be able to use one
> or several trading strategies to meet your specific goals and
> achieve your idea of financial success. ... Regardless, you'll leave
> the STOCK SUCCESS Training Academy armed with the
> knowledge and confidence to get started in the trading business.

2.     But Defendants did not provide any training or education at the workshop.

Instead, the sole purpose of the workshop was to up-sell "students" into additional useless but
more-expensive coursework and mentoring, which costs up to $64,899 per enrollee.

3.     Defendants purport to teach personal finance and business success to unwary
"students" through a series of financial education products and services. In association with the
Tigrent Learning defendants, Rich Dad™ Education defendants purportedly provide "students"
with comprehensive instruction and mentorship in real estate investment, stock trading, business
development, and individual investment strategies. Financial education workshops and training
courses are an integral part of the Rich Dad™ Education business model, which Tigrent
Learning helped develop and helps teach.

4.     Defendants advertise and promote their workshops and training courses as a
means of receiving a financial education to achieve long-term financial independence. As
advertised, the workshops and training courses will show attendees how to master valuable
financial skills like equities trading strategies, money management skills and risk management
techniques. However, Rich Dad™ Education workshops and training courses do not provide
attendees with any financial education that leads to financial success or independence. Rather,
they comprise an aggressive sales scam where attendees are encouraged to spend up to tens of

2

thousands of dollars and encumber themselves with crippling debt to buy useless additional courses.

5.      Defendants' sales scam is built on a misleading three-tiered sales pitch where customers are sold increasingly expensive financial training programs using pressure tactics and false promises concerning the programs' ability to produce financial results for trainees. Initially, customers are lured to attend one of two free workshops that are advertised as providing a financial education to attendees in a specific area of investing. However, the workshops do not provide any financial education, and their whole purpose is to sell attendees the paid 3-day training programs that are associated with those free classes. In turn, the purpose of the paid 3-day training programs is to not to provide financial education and skills training as promised, but to sell attendees on additional "advanced" training courses and personal mentoring. This is the laddered sales pitch, or up-sell, that forms the core of Defendants' business.

6.      In large part, the up-sell is executed by Defendants' training instructors who hold themselves out as experts in their investment field but have no discernable investing expertise or successful track record. But the trainers' only relevant skill is to accomplish the up-sell with the use of false and misleading promotion of more expensive "educational" workshops and mentoring programs.

7.      Complaint forums on the Internet are replete with the narratives of victims, all of whom describe the scam in strikingly similar terms. For example, one victim wrote:

> I paid for a 3-day real estate training seminar (10/3/08 – 10/5/08) and what I got was a 3 day sales pitch on additional seminars. When the "instructor" was asked several times when we would be receiving training he stated that "you didn't expect to receive detailed information on real estate in 3 days did you?"
>
> A large chunk of the seminar was about success stories of people who used the additional training. The instructor talked a lot about the deals he

3

has done. During a small chunk of the seminar he talked about his personal life, family, his weight loss success, etc. He talked a lot about the Cash Flow 101 game; also for sale. And attendants played the game several times during the "training".

Bottom-line, this seminar is a sales pitch disguised as an education seminar. Don't waste your money.[1]

Another victim wrote:

We had the same experience. We were pitched in a free seminar and spent $500 for the three day class which promised to teach us how to do cover calls and that it would be easy. Instead, we received a 3 day "infomercial" on strategies which cost a minimum of $10,000 all the way up to $40,000 and never learned the promised strategy which could have made us back the $500 hopefully plus. It turns out that Kiyosaki's name is on the course, but there is another educational organization that really runs it out of Utah. They probably only purchased the name. Some of the things said no doubt go against Kiyosaki's own principles. They were telling people how to try and get more credit and borrow the money, do whatever, just to pay for the Mentoring. Run from them. Then a follow-up call tried to convince me that I wasn't paying attention. What he was saying was something I already knew.

The class was run with round dinner tables, no internet connection for our own laptops and we had to squint to see small print on a screen to follow what he was doing --- showing us a bunch of advanced strategies and warning us not to try to do it at home! (at least that last portion was good advice).[2]

Another victim wrote:

I just took the first day of the training. I am disappointed that Robert Kiyosaki would attach his name to this "seminar", otherwise I would not have signed up. I am taking the "Launch Your Business Basic Training." It's pretty much a joke. I should have sticked to the books as other people said. The instructor is an expert on foreclosures. The foreclosure training they offer costs $3300 (this is at a steep "discount") so I asked the instructor if there were any books on foreclosures she would recommend. She couldn't name a single one and then proceeded to brow beat me into signing up for their training. She asked why I couldn't afford the $3300 course and basically said if I had a credit card with available credit I should be signing up for the class. The class is a giant infomercial for

---

[1] See http://www.complaintsboard.com/complaints/rich-dad-education-c178600.html.

[2] *Id.*

> specialized training and I wish that I could get my money back. STAY
> away from TIGRENT Education.[3]

8.      Defendants breached their contract with Plaintiff Robert Crewe by not providing

the training or education they contracted to provide and that Plaintiff paid for. Through this

lawsuit, Plaintiff seeks to recover, for himself and all other similarly situated purchasers of

Defendants' training programs and mentoring or coaching services, a full refund of the payments

they made for training and education they were promised but did not receive.

## PARTIES

9.      Plaintiff Robert Crewe is a citizen of New York State and a resident of Bronx

County. Plaintiff attended a Rich Dad™ Education "FREE Stock Success" workshop on March

9, 2011 in New York, New York. Based on Defendants' numerous misrepresentations discussed

herein, Plaintiff paid $199.00 at the workshop to attend a Rich Dad™ Education Stock Success

3-day Training program later that month. The Stock Success 3-day Training Program did not

provide Plaintiff with a financial education as promised. At all relevant times hereto, Plaintiff

was a consumer within the meaning of FDUTPA.

10.     Defendant Rich Dad Education, LLC is a Wyoming limited liability company

with a principal place of business in Cape Coral, Florida.

11.     Defendant Rich Global, LLC is a Wyoming limited liability company with a

principal place of business in Jackson, Wyoming.

12.     Defendant Rich Dad Operating Company, LLC is a Nevada limited liability

company with a principal place of business in Minden, Nevada.

13.     Defendant CASHFLOW Technologies, Inc. is a Nevada corporation with a

principal place of business in Scottsdale, Arizona.

---

[3] *Id.*

5

14.     Defendant Tigrent Inc. is a Colorado corporation with a principal place of business in Cape Coral, Florida.

15.     Defendant Tigrent Learning Inc. is a Florida corporation with a principal place of business in Cape Coral, Florida.

16.     Defendant Tigrent Brands Inc. is a Colorado corporation with a principal place of business in Cape Coral, Florida.

17.     Defendant Kiyosaki is a citizen of the State of Arizona who resides in the greater Phoenix area. At all times herein, defendant Kiyosaki approved, authorized, either expressly or tacitly directed, ratified and/or participated in the acts complained of herein by Defendants and their trainers.

18.     At all relevant times hereto, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendants within the course and scope of the agency, regarding the acts and omissions alleged.

19.     Plaintiff and counsel are ignorant about the true names and capacities of defendants sued herein as DOES 1 through 50, inclusive, and therefore sue these defendants by fictitious names. Plaintiff and counsel will seek court leave to amend this complaint to allege their true names and capacities when ascertained. At all relevant times, DOES 1 through 50, inclusive, were agents, servants, employees, representatives, partners, directors, officers, parents, subsidiaries, and/or other related or affiliated entities of the named defendants, and by acting as alleged herein, were acting in the course and scope of their agency, employment or other relationship with the named defendants, and thereby had the named defendants' permission, consent, authority and ratification in connection with those actions.

6

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)

because there are more than 100 class members and the aggregate amount in controversy exceeds

$5,000,000.00, exclusive of interest, fees, and costs, and Plaintiff, like most members of the

proposed class, is a citizen of a state different from Defendants.

21.     This Court has personal jurisdiction over Defendants because Defendants conduct

substantial business within New York, such that Defendants have significant, continuous and

pervasive contacts with the State of New York. Defendant Rich Dad Education, LLC was also

registered with the New York Secretary of State to conduct business within New York until July

19, 2011.

22.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because a

substantial part of the events giving rise to the claims enumerated herein occurred in this judicial

district, and defendants transact significant business throughout this district.

### Defendants' Choice of Law and Dispute Resolution Clauses

23.     Rich Dad Education's Student Agreement incorporates additional Terms and

Conditions that are set forth in a separate document from the Student Agreement. The Terms

and Conditions are never offered to new registrants for signature. In fact, new registrants receive

the separate Terms and Conditions only after signing the Student Agreement.

24.     The Terms and Conditions contain a choice of law clause favoring Florida State

law. The Terms and Conditions also contain a dispute resolution clause (hereafter, "Dispute

Resolution Terms") that purports to require customers to arbitrate disputes only on an

individualized basis; to waive any right to participate in a class action; to waive any right to trial

by jury; to prohibit the consolidation of any customer's claim with the claim of any other person;

and to force customers to waive other important rights.

25.     In relevant part, the Dispute Resolution Terms read:

> We agree that any Dispute (as defined below) between us shall be
> resolved exclusively and finally by binding arbitration under the
> Federal Arbitration Act administered by the National Arbitration
> Forum (NAF) under the Code of Procedure in effect when the
> claim is filed. You agree that we are entering into this arbitration
> agreement in connection with a transaction involving interstate
> commerce. The arbitration shall be held by submission of
> documents, by telephone, or online. Such arbitration shall be
> conducted under NAF rules, except as otherwise provided below.
> We will agree on another binding arbitration forum if NAF ceases
> operations. The arbitration will be conducted before a single
> arbitrator, and will be limited solely to the Dispute between you
> and us. The arbitration, or any portion of it, will not be
> consolidated with any other arbitration and will not be conducted
> on a class-wide or class-action basis . . . In any arbitration action or
> court proceeding to compel arbitration to enforce the terms of this
> paragraph or to enforce the result of any arbitration conducted
> hereunder, the prevailing party shall be entitled to obtain all
> reasonable costs, including its reasonable attorney fees at the trial
> and appellate levels. Notwithstanding, the parties agree that the
> maximum award that the arbitrator can award in this binding
> arbitration shall not exceed the amount paid by you to us under the
> Agreement plus the fees and costs provided for in this paragraph.
> No party shall be entitled to recovery for any indirect and/or
> consequential damages, including any incidental expenses
> associated with attending an in-person live training or in
> connection with arbitrating a claim hereunder.

26.     Rich Dad Education's Dispute Resolution Terms are unconscionable and

unenforceable because they require binding arbitration by the National Arbitration Forum

("NAF"), which is impossible since the NAF no longer administers consumer arbitrations, and

because the arbitration provision leaves customers without a viable means to seek to vindicate

their rights and claims as set forth herein.

27.     NAF's handling of consumer claims has raised serious concerns, and NAF

recently ceased conducting all consumer arbitrations. On July 14, 2009, the Attorney General of

the State of Minnesota filed a complaint against the NAF and its corporate affiliates, styled

*Swanson v. National Arbitration Forum, Inc., et al.*, No. 27-CV-09-18550, (Hennepin County

Dist. Ct. 2009), alleging violations of Minnesota's statutory prohibitions against consumer fraud,

deceptive trade practices, and false advertising for its public representations of independence and

impartiality from "big business" when that was not the case.  On July 17, 2009, NAF entered into

a Consent Judgment with Minnesota's Attorney General which "require[d] the complete

divestiture by the NAF Entities of any business related to the arbitration of consumer disputes."

Furthermore, the Consent Judgment required that "[o]n or after July 24, 2009, no NAF Entity

shall: . . . b. Administer or process any new Consumer Arbitration. [or] c. In any manner

participate in any new Consumer Arbitration."[4]  Therefore, NAF no longer handles consumer

arbitrations like the one described in the Dispute Resolution Terms.

28.     NAF continues to operate in other areas of dispute resolution in accordance with

the July 17, 2009 Consent Judgment.  As such, Plaintiff does not have to agree on another

binding arbitration forum according to the Dispute Resolution Terms.  Therefore, the arbitration

provision cannot be enforced as written.

29.     Among other reasons, Rich Dad Education's Dispute Resolution Terms are also

unconscionable and unenforceable because they (i) include fee shifting provisions; (ii) include

recovery caps that prohibit the maximum allowable recovery provided by applicable federal and

state law; and (iii) prohibit recovery for any indirect or consequential damages or expenses

permitted under applicable law.

30.     Even if the arbitration provision could be enforced according to its terms (which it

---

[4] Pursuant to the Consent Judgment, the term "Consumer Arbitration" means "any arbitration involving a dispute between a business entity and a private individual which relates to goods, services, or property of any kind allegedly provided by any business to the individual, or payment for such goods, services, or property." The term includes any claim by a third party debt buyer against a private individual.

9

cannot), doing so would render consumers without a viable means of vindicating their rights under the circumstances. For example, Plaintiff's out-of-pocket damages for purchasing the Stock Success 3-day Training program are $199. The cost to retain competent counsel to address the merits of this case would be at least hundreds of times that amount. No competent counsel would represent a plaintiff in an individual arbitration involving the relatively small damages at issue in this case. The cost of representation would be greater than any potential recovery the individual plaintiff might seek. Indeed, the economic reality of the market for legal services is such that the claims asserted in this case, even if meritorious, will not be litigated if they cannot be pursued on a class basis. Even assuming that an individual plaintiff was able to recover his/her actual damages, plus pre-judgment and post-judgment interest, the upfront expenditure of time and money required to litigate the claims and the uncertainty of prevailing would make it difficult if not impossible for a victim to obtain legal counsel on a contingent fee basis or to merit the payment of an hourly fee for such services. Due to the relatively small value of each individual consumer's claim, it would be completely economically unrealistic and impractical for any law firm or attorney to take this sort of case on behalf of only a single individual.

31.     Plaintiff would be unable to obtain competent legal representation to assert an individual claim challenging Defendants' fraudulent scheme because no competent, private-sector lawyer in New York or elsewhere in the United States would agree to undertake such representation.

32.     Due to the complexity of the claims asserted, it would be nearly impossible for an individual consumer to properly or adequately represent his/her own interests in any legal proceeding including small claims court or arbitration. The likelihood that someone could win such claims without the benefit of legal counsel would be very small, particularly where, as here,

10

defendants would be represented by sophisticated legal counsel.

33.     Individual consumers also typically have little knowledge regarding the laws governing consumer transactions and the potential claims and defenses that they may have. Understandably, most consumers are not capable of engaging in the legal research necessary to bring an action challenging this fraudulent scheme, and even fewer are going to be sufficiently motivated to do so without the potential for class action treatment. Therefore, the arbitration provision in Rich Dad Education's Dispute Resolution Terms effectively leaves customers without a viable means to seek to vindicate their rights and claims and should not be enforced.

## FACTS COMMON TO ALL COUNTS

### Robert Kiyosaki

34.     The mastermind behind the Rich Dad™ empire is Robert T. Kiyosaki ("Kiyosaki"). Kiyosaki controls the Rich Dad Defendants and is personally responsible for the business operations of the scam described herein, including product development, marketing and sales of Defendants' Rich Dad™ Education workshops and training courses.

35.     Kiyosaki is a salesman and motivational speaker who holds himself out as a financial expert although he has no real financial expertise.

36.     Kiyosaki has no formal training or education in business or finance, and has never been employed in either field. Moreover, Plaintiff and counsel are unaware of any specific instances of Kiyosaki's personal investment successes or any real-world investing experience or successful track record of Kiyosaki.

37.     Kiyosaki became heavily involved in Amway in the 1980s after creating several start-up businesses that went bankrupt. Kiyosaki used Amway's pyramid marketing organization to promote an early version of his first book Rich Dad Poor Dad.

11

38.     In 1997, Kiyosaki launched his Rich Dad™ empire by authoring <u>Rich Dad</u> <u>Poor</u> <u>Dad</u>, a "how to" guide for accumulating wealth that contains nothing in the way of concrete advice about how to become wealthy. In that book, Kiyosaki disclosed that the source of his financial knowledge and expertise was his so-called "Rich Dad." Kiyosaki acknowledged and thanked his "Rich Dad" in the opening pages of <u>Rich Dad Poor Dad</u> for being a "powerful role model." However, in the February 2003 issue of <u>SmartMoney</u> magazine, Kiyosaki admitted that his "Rich Dad" was not a real person, but rather "a myth, like Harry Potter." Therefore, the basis for Kiyosaki's business and financial expertise is a complete fabrication.

39.     In or about 2006, Kiyosaki partnered with Tigrent Inc. and the other Tigrent Defendants to expand his suite of products and services, which now includes the Rich Dad™ Education workshops and training courses. Kiyosaki formed a collection of corporations and limited liability companies in connection with this expansion to fraudulently promote the sale of the Rich Dad™ Education courses.

40.     Kiyosaki conspired with his co-defendants, their employees and their affiliates to devise and falsely market the Rich Dad™ Education courses which provide no financial education as claimed, but rather offer an aggressive three-tier sales scam where attendees are encouraged to spend up to tens of thousands of dollars to buy useless additional training courses.

41.     Kiyosaki's control over this scam is evident from his omnipresence and participation in all related business operations. Kiyosaki's name, image, personal insights and messages appear prominently on Rich Dad's™ products and services, website, advertisements, and promotional literature. For example, print advertisements for Rich Dad™ Education workshops featuring Kiyosaki included the following quotes from him: "STOP WORRYING ABOUT MONEY! . . . DO YOU WANT TO BE RICH OR POOR? NOW YOU HAVE THE

POWER TO CHOOSE. A crisis like this is really your biggest opportunity because all the losers give up. And the playing field is left wide open to people who understand 'The New Rules of Money.' The winners will be people like you. That's what *my Rich Dad Education training team* will show you at a FREE 'Learn to be Rich' Workshop." (emphasis supplied).

42.    In addition, e-mail reminders about Rich Dad™ Education's free workshops also demonstrate Kiyosaki's personal involvement and control over the alleged scheme. For example, students of the free "Stock Success" Workshop receive email reminders about their Workshop from rds.info@richdadstock.com which state in part: "At this FREE training, you will discover powerful stock strategies that can produce profits no matter which direction the market is moving. *My expert trainers* will also:  Explode the Myth that You Need a High Income to Become Financially Independent; Show You Why Savers Are Losers; and Demonstrate Techniques to Take Control of Your Own Investments & Achieve Your Financial Goals." (emphasis supplied). The e-mail reminders are signed by Robert Kiyosaki.

43.    Kiyosaki is personally liable for the alleged harms due to the operational control he asserts over his co-defendants, and due to his public representations concerning Rich Dad™ Education workshops and training courses and his other involvement and role in the misconduct.

### Rich Dad™ Education Workshops and Training Courses

44.    Defendants sell an array of workshops and training courses that purportedly provide attendees with a financial education that helps them achieve long-term financial independence. However, Defendants' workshops and training courses are not educational and do not help attendees achieve long-term financial independence or build financial security as promised. Rather, the purpose of Defendants' workshops and courses is to sell additional courses to attendees.

45. Rich Dad™ Education courses are organized into a three-tier program that forms the basis for an aggressive and misleading sales pitch to attendees. Defendants promise to provide a financial education at their two "FREE" workshops—the "Learn to be Rich Workshop," which focuses on real estate investing, or the "Stock Success Workshop," which focuses on equities trading (collectively, the "Free Workshops"). However, Defendants do not provide attendees of the Free Workshops with a financial education. Instead, attendees at the Free Workshops are promised that they will receive their financial education at a follow-up, paid 3-day training course (the "3-day Classes"). Thus, the purpose of the Free Workshops is not to educate, but to enroll attendees in the paid 3-day Class that corresponds with their Free Workshop. Enrollment for a 3-day Class costs $199 if an attendee signs up during the Free Workshop, or $595 if an attendee signs up after the Free Workshop.

46. At the 3-day Classes—called the "Learn to be Rich 3-Day Training" and the "Stock Success 3-Day Training"—Defendants promise to teach attendees how to use financial tools and strategies that will transform them into financially intelligent, self-directed investors. However, at the 3-day Classes, Defendants do not teach attendees how to use any financial tools and strategies that provide any measure of financial acumen or independence. Instead, Defendants tell the attendees that they must register for further "financial education" in the form of paid advanced coursework and mentorship (the "Advanced Classes") to learn how to use these tools and strategies. Thus, the purpose of the 3-day Classes is not to educate, but to enroll attendees in the Advanced Classes that correspond with their 3-day Class.

47. On-site enrollment for the Advanced Class programs costs from $8,990 for the "Classic" package to $39,490 for the "Wealth Master" package, and full-price enrollment costs from $10,989 to $64,899 if an attendee signs up after the 3-day Classes.

14

48.     Rich Dad™ Education courses are marketed to novice investors with little or no investing experience. This facilitates Defendants' up-sell of the paid Rich Dad™ Education courses through the three-tier structure described above. In addition, Defendants' up-sell of the paid courses is based on predatory sales tactics and false and misleading marketing statements set forth herein.

## False And Misleading Marketing Of Rich Dad™ Education Workshops And Classes

### Defendants' False And Misleading E-mail Ads For The Free Workshops

49.     Defendants advertise the Free Workshops through e-mail advertisements. For example, Defendants advertise their free Stock Success Workshop by sending a standardized e-mail advertisement to potential registrants (the "Stock Success Workshop E-mail Ad") promising that attendees will discover how to "Manage Your Own Money" and "Protect Your Profits & Reduce Your Risk" at the workshop. But the workshop provides no information about managing money, protecting profits, or managing risk. In addition, the Stock Success Workshop E-mail Ad promises, "This 2-hour workshop can teach you how you can trade better – safer – smarter . . . **even if you've never bought or sold stock before!**" (emphasis in original). However, the workshop does not provide attendees with any instruction about how to trade securities, never mind in a safe, intelligent manner. The Stock Success Workshop E-mail Ad is electronically signed by "Robert Kiyosaki for Rich Dad Education."

50.     On March 7, 2011, Plaintiff received and read a Stock Success Workshop E-mail Ad from Defendants. Plaintiff relied on the statements contained in Defendants' e-mail when he decided to attend Defendants' "Stock Success Workshop," scheduled for March 9, 2011. Plaintiff attended the March 9, 2011 Stock Success Workshop where Defendants failed to satisfy any of the representations made in the Stock Success Workshop E-mail Ad.

15

## Defendants' Unqualified Trainers

51.     Defendants' Free Workshops and 3-day Classes are led by Rich Dad Education and Tigrent Learning "trainers" whom Defendants hold out as experts in their investment field but have no discernible investing expertise or successful investment track record.  Rather, the trainers' real expertise is in sales and motivational speaking.

52.     E-mail reminders from Defendants' about the Free Workshops highlight the purported expertise of the workshop trainers.  For example, students of the Stock Success Workshop receive standardized e-mail reminders about their Workshop from rds.info@richdadstock.com (the "Stock Success Workshop Email Reminder") stating:  "At this FREE training, you will discover powerful stock strategies that can produce profits no matter which direction the market is moving.  *My expert trainers* will also:  Explode the Myth that You Need a High Income to Become Financially Independent; Show You Why Savers Are Losers; and Demonstrate Techniques to Take Control of Your Own Investments & Achieve Your Financial Goals."  (emphasis supplied).  However, Defendants' trainers for the Stock Success Workshop and Learn to be Rich Workshop do not have any relevant expertise in their purported investment field.

53.     On March 8, 2011, Plaintiff received a Stock Success Workshop E-mail Reminder.  Plaintiff relied on the statements contained in Defendants' e-mail when he decided to attend Defendants' Stock Success Workshop, scheduled for March 9, 2011.

54.     Plaintiff attended the March 9, 2011 Stock Success Workshop which was led by Defendants' trainer Chris Briggs from West Palm Beach, Florida.  At the Workshop, Mr. Briggs introduced himself as a professional "swing trader" and a "market expert," but he never provided any relevant credentials or resume-quality experience from past employers, or evidence of any

successful track record from equities trading. Based on the investigation of Plaintiffs' counsel, there is no evidence that Mr. Briggs is a professional swing (or options) trader or equities market expert, or that he is qualified to train others about equities trading.

55.     Defendants' 3-day Class materials also highlight the purported expertise of their 3-day Class trainers. Plaintiff registered for Defendants' Stock Success 3-day Training while attending the free Stock Success Workshop on March 9, 2011. Plaintiff received a promotional Stock Success 3-day Training pamphlet as part of his registration for the 3-day Class ("Stock Success 3-day Training Pamphlet"). Defendants' Stock Success 3-day Training Pamphlet states: "Your STOCK SUCCESS Training instructors are trainers in the true sense of the word. We don't hand you a book and send you on your way, and we don't believe in teaching abstract 'theory.' Instead, our trainers are able to teach you 'reality' from their years of experience trading in the financial markets." However, Defendants' trainers for the "Stock Success 3-day Training" do not have any relevant expertise trading in the financial markets.

56.     Plaintiff had a contractual right to cancel his registration for the Stock Success 3-day Training and receive a full refund within three business days of registering. However, Plaintiff decided not to exercise his right to cancel after reviewing and relying on Defendants' statements about the experience of their 3-day Class trainers contained in the Stock Success 3-day Training Pamphlet.

57.     From March 31, 2011 to April 2, 2011, Plaintiff attended Defendants' Stock Success 3-day Training at the Marriott Downtown Hotel in New York, New York. The 3-day Class was led by Defendants' trainer, Scott Stewart. Mr. Stewart described himself as a former financial adviser who is currently a professional, full-time trader and a market expert. However, Mr. Stewart failed to offer any relevant resume-quality credentials about his professional past.

17

Moreover, he did not provide any evidence of a successful track record from equities trading. Based on the investigation of Plaintiffs' counsel, there is no evidence that Mr. Stewart is an equities expert, or that he is qualified to train others about equities trading.

### Systematic, Standardized Misrepresentations By Defendants' Workshop Trainers

58.    Defendants' Free Workshop trainers make standardized misrepresentations to attendees of the Free Workshops to up-sell Defendants' 3-day Classes.

59.    For example, on March 9, 2011, Plaintiff attended Defendants' Stock Success Workshop in a conference hall in the Marriott Downtown Hotel in Manhattan. Approximately ninety (90) people attended the Workshop.

60.    Chris Briggs was the trainer who led the Workshop.  Mr. Briggs told the audience that the Workshop was about learning how to "build wealth." Further to that, Mr. Briggs said "others are making millions trading in the market and we're here to teach you how to do that." However, Mr. Briggs did not teach any wealth building techniques during the Workshop.

61.    Instead, Mr. Briggs launched into a discussion about assets and liabilities, during which he identified "ignorance" as the chief liability and "education" as the primary asset. The need for education became the core theme for the sales pitch that continued throughout the Workshop.

62.    Mr. Briggs incorporated equities trading into his sales pitch saying, "The stock market rewards monetarily.  It's just that people need an education in order to trade." "If you want financial freedom—to be able to do what you want, when you want, and how you want with no restraints—then you must take action, and we can teach you how." However, Mr. Briggs did not teach anything about how to trade equities or achieve financial freedom during the Workshop.

63.   Mr. Briggs defined the goal of equities trading as "winning often in the market and making money no matter how the market is going." To illustrate this, he pointed to a projection slide that showed a three-part investment cycle of making trades, realizing profit, and reinvesting in the market. The possibility of losing money in the market was not addressed.

64.   In a loud voice, Mr. Briggs roused the audience and said, "Achieve your dream! **You will be able to make $1,000 a week consistently trading stock.** Then you can quit your job. But you need an education first." Then, Mr. Briggs introduced Defendants' paid 3-day Stock Success Training program saying, **"This is where we teach you your financial education."** However, at the 3-day Stock Success Training, Defendants' do not provide attendees with a financial education, and they do not teach registrants how to make $1,000 a week consistently trading stock.

65.   Next, Mr. Briggs shouted "PEOPLE, TAKE ACTION! OVERCOME YOUR FEAR! THIS IS A STRESS-FREE WAY TO MAKE MONEY! Others are rolling deep, making tons of money. Wall Street is right around the corner. Come get your piece of the action. We're the only company left to learn from, and good luck learning this stuff yourself."

66.   The trainer proceeded to make a "special offer" to the audience members: "If you register in this ballroom today for the 3-day training, it will cost only $199. That's about $400 of savings off the regular price. If you wait and order over the phone tomorrow, this training will cost you $595."

67.   At the crescendo of the sales pitch, Mr. Briggs asked all of his trainees to stand up together and register for the 3-day Class. Approximately, 30 to 40 audience members stood up and enrolled, including Plaintiff. Plaintiff registered for the 3-day Class based on the false and misleading statements made by Mr. Briggs. The Workshop ended soon thereafter, having

19

offered no financial education for the audience.

68.     All of Defendants' Free Workshop trainers make substantially similar misrepresentations to the misrepresentations uttered by Mr. Briggs.

69.     At all times relevant hereto, all of Defendants' Free Workshop trainers, including Mr. Briggs, acted as agents for and under the control of Defendants. And Defendants' Free Workshop trainers uttered their false and misleading statements within the course and scope of activity that those agents undertook on behalf of Defendants.

70.     Moreover, Defendants allowed their Free Workshop trainers to make false and misleading statements without sufficient monitoring or supervision.

**Defendants' False And Misleading Statements About The 3-day Classes**

*Rich Dad Education, LLC's False And Misleading Student Agreements*

71.     To register for the 3-day Classes, registrants are required to sign a form contract with Rich Dad Education, LLC. For example, to register for Defendants' Stock Success 3-Day Training, Plaintiff signed a form contract with Rich Dad Education, LLC called a Student Agreement (the "Student Agreement"). The Student Agreement incorporates additional terms and conditions set forth in a separate form document entitled Terms and Conditions to Student Agreement (the "Terms and Conditions") which enrollees Plaintiff receive as part of a Stock Success take-home kit after signing the Student Agreement. Pursuant to the Student Agreement, Plaintiff had a 3-day right of cancelation to cancel his registration which ran from the date of the agreement (the "Cancelation Right").

72.     In relevant part, the Terms and Conditions state: "You hereby acknowledge that you are purchasing educational training and/or materials only." In addition, the Terms and Conditions state: "The educational training program provided hereunder is not designed or

20

intended to qualify you for employment. Our curriculum is avocational in nature and is intended for the purpose of the accumulation of wealth by . . . our students." However, the Stock Success 3-day Training does not provide any educational training to attendees. And the Stock Success 3-day Training curriculum does not teach attendees how to accumulate wealth.

### *Defendants' False And Misleading 3-day Training Promotional Pamphlets*

73.     Defendants promote their 3-day Classes with pamphlets that registrants receive as part of a registration take-home kit.

74.     Defendants' Stock Success take-home kit included a Stock Success 3-day Training Pamphlet that promoted the 3-day Class. Plaintiff read the promotional Pamphlet on the same day he received it. The Pamphlet included the following statements about the 3-day Stock Success Training:

- "Your 3-Day STOCK SUCCESS training is designed to help you effectively pursue the many wealth-building opportunities provided by the stock and options market. You now have the entire **Rich Dad Education** team to share their knowledge and experience in the markets with you. They are here to help you turn your desire for more into a reality."

- "Your 3-Day Training is comprehensive. It will cover everything from thinking like the rich think to developing a personal plan and executing on that plan."

- "WHAT YOU'LL LEARN AT THE STOCK SUCCESS TRAINING ... This intensive, 3-Day Training curriculum focuses on establishing you as an educated investor. ... By employing numerous strategies, you'll learn how you can create profit potential in every type of market. ... By raising your financial IQ, you'll be able to use one or several trading strategies to meet your specific goals and achieve

21

your idea of financial success. ... Regardless, you'll leave the STOCK SUCCESS
Training Academy armed with the knowledge and confidence to get started in the
trading business." A copy of the Pamphlet is annexed hereto as Exhibit A.

75.    Plaintiff did not exercise his Cancelation Right because of these statements in the
Stock Success 3-day Training Pamphlet. In fact, these statements solidified Plaintiff's decision
to continue with his purchase and attend the 3-day Class.

76.    However, despite the statements contained in the Pamphlet, the Stock Success 3-
day Training (i) does not help attendees to pursue wealth-building opportunities in the equities
markets; (ii) does not help attendees to execute their personal financial plans; (iii) does not
establish attendees as educated investors; (iv) does not teach attendees how to create profit in
every type of securities market; and (v) does not provide attendees with the knowledge or
confidence to begin trading.

### Defendants' False And Misleading E-mails About The 3-Day Classes

77.    Defendants also promote their 3-day Classes using promotional reminder e-mails.
For example, Defendants promote their Stock Success 3-day Training by sending standardized e-
mail reminders to registrants.

78.    On March 24, 2011, one week prior to Plaintiff's 3-day Class, Plaintiff received a
promotional reminder e-mail from Defendants about his upcoming Stock Success 3-day
Training. The reminder e-mail stated: "Prepare to become a financially intelligent self-directed
trader as your intensive 3-day training will focus on:

- Positioning Yourself to Maximize Your Profits while Reducing Your Risk

- Controlling a Stock for a Fraction of Its Purchase Price

- Creating Cash Flow From Stocks You Already Own

22

• Managing Your Own Money & Take Control of Your Life" (sic)

However, the 3-day Training does not teach attendees how to become a trader, nor does it show attendees how to do any of the bulleted items listed therein.

79. Four days later, on March 28, 2011, Plaintiff received another promotional reminder e-mail from Defendants stating: "The wait is over – Your Stock Success 3-Day Training starts in just 3 days. We hope you're as eager to learn new tools and strategies as we are to show them to you. By this time next week, you'll know how to:

- Spot the 5 Factors Professional Traders Use to Pick the Right Stocks Again & Again

- Protect Your Profits – Even if a Stock's Price Falls to Zero

- Make Money from Stocks You Don't Even Own

- Trade Smarter – Safer – Better"

However, the 3-day Training does not teach attendees how to spot any factors that professional traders use to pick stocks. Moreover, the 3-day Training does not teach attendees how to trade equities, and therefore does not teach attendees how to profit from trading equities or protect trading profits.

80. Plaintiff attended Defendants' Stock Success 3-Day Training from March 31, 2011 to April 2, 2011. During the 3-day Class, Defendants failed to satisfy any of the representations made in their promotional e-mail reminders, as set forth herein.

## Systematic, Standardized Misrepresentations By Defendants' 3-day Class Trainers

81. Defendants' trainers for the 3-day Classes make standardized misrepresentations to attendees to up-sell the Advanced Classes.

82. For example, Plaintiff attended Defendants' Stock Success 3-day Training from March 31, 2011 to April 2, 2011 at the Marriott Downtown Hotel in Manhattan. Approximately

one hundred (100) people attended the 3-day Class.

83.     Scott Stewart was the trainer who led the 3-day Class. As part of his presentation, Mr. Stewart told the audience that they would be able to make $3,000 per month from the skills taught during the 3-day Class. However, Defendants' Stock Success 3-day Training does not teach attendees any skills that enable them to make money, and Plaintiff did not earn any money as result of his attendance.

84.     Despite being promoted as a financial education course, the 3-day Classes provide no financial education. Rather, the 3-day Classes function as thinly disguised infomercials to up-sell attendees into Defendants' Advanced Classes.

85.     Defendants' Stock Success take-home kit included promotional materials for Defendants Advanced Classes, including a "Financial Markets Advanced Training Course Catalog" (the "Advanced Course Catalogue") and a menu/price list of advanced training packages offered by Defendants (the "Advanced Classes List"). Rather than providing attendees with a financial education as promised, Mr. Stewart spent the vast majority of the 3-day Class reviewing Defendants' Advanced Course Catalog and discussing the Advanced Classes List.

86.     Defendants' Advanced Classes List includes seven options available for purchase. The most basic and least expensive is the "Classic" package, which includes two advanced training programs, offered at a full price of $10,989, or a reduced price of $8,990 if purchased on-site at the Paid Program. The most comprehensive and expensive is the "Wealth Master" package, which includes ten advanced training programs, a personal mentor program and 2 years of Trading Lab (free), offered at a full price of $64,899, or a reduced price of $39,490 if purchased on-site at the Paid Program. A copy of the Advanced Classes List is annexed hereto as Exhibit B.

24

87.     Mr. Stewart explained that Defendants' Advanced Classes were necessary for "students" to achieve a so-called "level 4 competency" of trading concepts and strategies. Furthermore, he said that most individuals require some handholding to get started trading, and the Advanced Classes provide that service. Moreover, Mr. Stewart told audience members that they are "guaranteed" to make their money back if they enroll in the Advanced Classes. However, attendees who enroll for Defendants Advanced Classes do not make their money back.

88.     Mr. Stewart suggested that the attendees should take time during the 3-day Class to call their credit card companies and demand balance increases to obtain funds for purchasing Defendants' Advanced Classes. Mr. Stewart did not inform attendees that they would likely accrue finance charges, interest fees, and/or late fees by charging the Advanced Classes on their credit cards. Mr. Stewart also failed to inform the attendees that they could damage their credit scores by increasing credit limits and "maxing out" their cards.

89.     Approximately 15 to 20 audience members enrolled for Defendants' Advanced Classes during the 3-day Class. Despite being promoted as financial education courses, the Advanced Classes function merely as another promotional tool to sell additional Advanced Classes to attendees.

90.     All of Defendants' 3-day Class trainers make substantially similar misrepresentations to the misrepresentations uttered by Mr. Stewart.

91.     At all times relevant hereto, all of Defendants' 3-day Class trainers, including Mr. Stewart, acted as agents for and under the control of Defendants. And Defendants' 3-day Class trainers uttered their false and misleading statements within the course and scope of activity that those agents undertook on behalf of Defendants.

92.     Moreover, Defendants allowed their 3-day Class trainers to make false and

25

misleading statements without sufficient monitoring or supervision.

## Defendants' Admissions In Their Hold Harmless Agreement

93. On the final day of Defendants' 3-day Classes, Defendants' trainers provide a form hold harmless agreement (the "Hold Harmless Agreement") to all attendees who do not enroll in the Advanced Classes. The trainers request that attendees sign and return the agreement before leaving the 3-day Class. A copy of the Hold Harmless Agreement is annexed hereto as Exhibit C.

94. For example, on the third day of his Stock Success 3-day Training, Plaintiff received and was asked to sign and return a single-page form "Release and Waiver of Liability, Assumption of Risk and Hold Harmless Agreement" which states, "I _____ attended a 3-day basic stock and option trading class through Robert Kiyosaki's Rich Dad Stock Success System. The class was instructed by Scott Stewart. … I have decided that I do not need further knowledge or instruction with the trading strategies that were introduced in my 3 day class and I am willing to assume all the risk of loss by going forward with my trading WITHOUT gaining the recommended training. I further acknowledge that Mr. Stewart and [Robert Kiyosaki's] Success Coaches advised me of the fact that they were not aware of any students who [refused to enroll in the Advanced Classes] and achieved the results that were stated as possible in the 3 day workshop. … I hereby acknowledge that at this current time I do not know how to actually construct, place and manage the strategies that I was exposed to in this 3 day class however I am going to attempt to trade them anyway." Plaintiff did not enroll in Defendants' Advanced Classes, and he did not sign Defendant's Hold Harmless Agreement.

95. Defendants' form Hold Harmless Agreement contains admissions that Defendants' 3-day Classes are not what they are promoted as. In Plaintiff's case, the Stock

26

Success 3-day Training did not provide attendees with the knowledge and confidence to trade stocks in the equities markets as promised.

## CLASS ACTION ALLEGATIONS

96.     Plaintiff seeks to represent a class defined as all persons in the United States and its territories who paid to attend Defendants' training seminars and/or purchased Defendants' mentoring or coaching services (hereafter, the "Class"). Excluded from the Class are governmental entities, defendants, any judicial offer presiding over this matter, and the members of their immediate families and judicial staff.

97.     Numerosity: The members of the Class are so numerous that their individual joinder would be impracticable in that: (a) the Class includes thousands of individual members; (b) the precise number of Class members and their identities are unknown to Plaintiff but are well known to defendants and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the thousands of individual Class members to be individually represented in separate actions; and (d) the relatively small amount of damages suffered by some of the Class members makes it economically unfeasible for those Class members to file an individual action to protect their rights.

98.     Commonality/Predominance: Common questions of law and fact predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

- Whether Defendants' conduct violated provisions of FDUTPA;

- Whether Defendants' promotional materials and other advertising are likely to deceive the public;

- Whether Defendants' conduct was false, misleading or likely to deceive;

27

- Whether Defendants participated in and pursued the fraudulent scheme or course of conduct complained of;

- Whether Defendants received funds from Plaintiff and class members from which defendants were unjustly enriched;

- Whether Defendant Rich Dad Education, LLC breached Student Agreements;

- Whether Defendant Rich Dad Education, LLC breached the implied covenant of good faith and fair dealing;

- Whether Defendants' acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

- Whether Defendants knew that their trainers omitted and/or misrepresented material facts;

- Whether Defendants properly monitored or intervened to prevent fraudulent conduct by their trainers;

- Whether Defendants are liable for intentional and/or negligent misrepresentations;

- Whether Defendants were unjustly enriched by the unlawful conduct alleged herein;

- Whether Plaintiff and Class members have been harmed and, if so, the proper measure of damages;

- Whether Plaintiff and Class members are entitled to equitable relief and, if so, the nature of such relief.

99.    Typicality: Plaintiff's claims are typical of the claims of the Class members.

Plaintiff and all Class members have been injured by the same wrongful practices engaged in by defendants. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

100.    Adequacy: Plaintiff will fully and adequately assert and protect the interests of the Class. Plaintiff has retained counsel who is experienced in class actions and complex mass tort litigation. Neither Plaintiff nor his counsel have interests contrary to or conflicting with the interests of the Class.

101.    Superiority: A class action is superior to all other available methods for the fair

and efficient adjudication of this lawsuit because individual litigation of the claims by each of

the Class members is economically unfeasible and impractical. While the aggregate amount of

the damages suffered by the Class is in the millions of dollars, the individual damages suffered

by most Class members as a result of the wrongful conduct by Defendant do not warrant the

expense of individual lawsuits. Even if the individual damages were sufficient to warrant

individual lawsuits, the court system would be unreasonably burdened by the number of cases

that would be filed.

102.    Plaintiff does not anticipate any difficulties in the management of this litigation.

## COUNT 1

### For Declaratory Relief Pursuant To 28 U.S.C. §§ 2201-02

103.    Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

104.    Defendants incorporate by reference all allegations of all prior paragraphs as

though fully set forth herein.

105.    Pursuant to 28 U.S.C. §§ 2201-02, Plaintiff seeks a declaratory ruling that the

arbitration provisions set forth in the Rich Dad Education Student Agreement are unenforceable.

## COUNT 2

### For Breach of Contract

106.    Plaintiff hereby incorporates by reference the allegations contained in all

preceding paragraphs of this complaint.

107.    As discussed above, Plaintiff and Class members entered into a legally binding form Student Agreement with Rich Dad Education, LLC to enroll in the 3-day Classes. The Student Agreement incorporates additional Terms and Conditions.

108.    "Student Agreement" is a misnomer for this contract. The agreement states that an "educational training program" will be provided to the trainee which is "intended for the purpose of the accumulation of wealth by . . . [the trainee]." But trainees do not receive any financial education during the 3-day Classes.

109.    Plaintiff and Class members have performed all of their duties and obligations under the Student Agreement, except those excused by Rich Dad Education, LLC's nonperformance.

110.    Rich Dad Education, LLC materially breached the aforementioned contract by depriving Plaintiff and Class members of the benefit of their bargain by intentionally, purposefully and/or negligently failing to provide the financial educational that was promised.

111.    As a direct and proximate result of Rich Dad Education, LLC's breach of contract, Plaintiff and Class members have and will continue to suffer damages.

## COUNT 3

### For Breach of Implied Covenant of Good Faith and Fair Dealing

112.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

113.    The contract between Rich Dad Education, LLC and Plaintiff imposed on each party a duty of good faith and fair dealing in the performance of the Student Agreement.

114.    Rich Dad Education, LLC breached its duty of good faith and fair dealing by intentionally, purposefully and/or negligently failing to provide the financial education training

30

program that was promised. The Student Agreement states that an "educational training program" will be provided to the trainee which is "intended for the purpose of the accumulation of wealth by . . . [the trainee]." But trainees do not receive any financial education during the 3-day Classes.

115.    Rich Dad Education, LLC further breached its duty of good faith and fair dealing by failing to properly monitor or intervene to prevent fraudulent conduct by its training instructors during paid training programs.

116.    Rich Dad Education, LLC's conduct was conscious, deliberate and unfairly frustrated the agreed purpose of the parties in carrying out the Student Agreement.

117.    Rich Dad Education, LLC's conduct disappointed the reasonable expectations of Plaintiff and Class members, thereby depriving them of the benefits of their bargain.

118.    As a direct and proximate result of Rich Dad Education, LLC's breach of good faith and fair dealing, Plaintiff and Class members have and will continue to suffer damages.

## COUNT 4

### For Violation of FDUTPA

119.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

120.    Defendants are liable under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*

121.    Defendants' actions and omissions, as alleged herein, constitute unfair or deceptive acts or practices in the conduct of trade or commerce within the meaning of FDUTPA, and they misled consumers including Plaintiff and the Class members.

31

122.    Specifically, the fraudulent, deceptive, unethical, and unscrupulous actions and omissions of Defendants and their training instructors in marketing and selling Defendants' products and services were material to Plaintiff's and the Class members' decisions to attend the Free Workshops and purchase the 3-day Classes and Advanced Classes, and thus create liability under this law.

123.    Plaintiff and the Class members sustained an ascertainable loss as a result of Defendants' unfair, deceptive and misleading conduct, and seek injunctive relief to require Defendants to alter their conduct relating to marketing and selling their Free Workshops, 3-day Classes and Advanced Classes.

124.    Plaintiff and Class members are also entitled to actual damages, reasonable attorneys' fees, and any other appropriate legal and equitable relief allowable under FDUTPA.

## COUNT 5

### For Unjust Enrichment

125.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

126.    Defendants received benefits from, and at the expense of Plaintiff and Class members, who were improperly charged for services that Defendants promised but did not provide.

127.    Defendants accepted and have retained the ill-gotten benefits.

128.    It would be unjust for Defendants to retain those benefits at the expense of Plaintiff and Class members.

## COUNT 6

### For Negligent Misrepresentation

129.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

130.    As discussed above, Defendants and their training instructors provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about Defendants' workshops and training courses.

131.    At an absolute minimum, Defendants and their training instructors negligently misrepresented and/or negligently omitted material facts about Defendants' workshops and training courses, including but not limited to the expertise of the trainers and mentors; the true nature and subject matter of the Free Workshops, 3-day Classes and Advanced Classes; and the financial efficacy of the Free Workshops, 3-day Classes and Advanced Classes.

132.    The negligent misrepresentations and omissions made by Defendants and their training instructors, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to attend Defendants' Free Workshops and purchase Defendants' 3-day Classes and Advanced Classes.

133.    The negligent actions of Defendants and their training instructors caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

### COUNT 7

### For Fraud

134.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

33

135.    As discussed above, Defendants and their trainers provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about Defendants' workshops and training courses, including but not limited to the expertise of the trainers and mentors; the true nature and subject matter of the Free Workshops, 3-day Classes and Advanced Classes; and the financial efficacy of the Free Workshops, 3-day Classes and Advanced Classes. These misrepresentations and omissions were made with knowledge of their falsehood.

136.    The misrepresentations and omissions made by Defendants and their training instructors, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to attend Defendants' Free Workshops and purchase Defendants' 3-day Classes and Advanced Classes.

137.    The fraudulent actions of Defendants and their training instructors caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT 8

### Alter Ego/Veil Piercing - Kiyosaki

138.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

139.    Kiyosaki is liable for the conduct of the corporate Defendants set forth above in the First through Seventh causes of action under a theory of alter ego/veil piercing because he used the corporate form of the corporate Defendants to fraudulently promote the Free Workshops, 3-day Classes and Advanced Classes, and to conceal the profits and income derived from the alleged hoax to frustrate the victims' ability to obtain redress for the fraud.

34

140.    Kiyosaki dominates and controls the corporate Defendants to such an extent that

their independent existence is a sham. In light of his domination, there is such a unity of interest

and ownership between Kiyosaki and the corporate Defendants that their independence is non-

existent. Moreover, failure to disregard the corporate entity would sanction fraud and promote

injustice since Kiyosaki will have looted the proceeds of the fraud from the corporate

Defendants, thereby leaving them unable to satisfy any judgment that may be obtained in this

action.

141.    As a direct and proximate result of Kiyosaki's fraudulent and improper use of the

corporate Defendants' corporate form, Plaintiff and Class members have been damaged.

## JURY DEMAND

142.    Plaintiff demands a jury as to all issues and claims triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class members, demand

judgment in their favor and against defendants as follows:

A.    For an Order certifying this Class pursuant to Fed.R.Civ.P. 23 appointing Plaintiff
      as the representative of the Class, and appointing counsel for Plaintiff as counsel
      for the Class;

B.    For an award of all compensatory and other damages suffered by Plaintiff and the
      Class;

C.    For an award of all costs incurred by Plaintiff in pursuing this action;

D.    For all forms of relief requested above;

E.    For an award of reasonable attorneys' and experts' fees and expenses; and

F.    For any other legal or equitable relief the Court deems appropriate.

35

Dated: November 16, 2011

Respectfully submitted,

BURSOR & FISHER, P.A.
Scott A. Bursor (SB-1141)
Joseph I. Marchese (JM-1976)
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
E-Mail:  scott@bursor.com
          jmarchese@bursor.com

By: _____
    Joseph I. Marchese

*Attorneys for Plaintiff*

# EXHIBIT A



# STOCK SUCCESS
## 3-Day Training



RICH DAD.
**EDUCATION**

# Congratulations!

## YOU'VE TAKEN THE FIRST STEP TOWARDS TRADING UP TO FINANCIAL INTELLIGENCE

We applaud you for choosing the STOCK SUCCESS Training Academy to increase your financial IQ. You're already one step closer to mastering the skills market pros use everyday to create wealth. Your 3-Day STOCK SUCCESS training is designed to help you effectively pursue the many wealth-building opportunities provided by the stock and options market.

You now have the entire **Rich Dad Education**™ team to share their knowledge and experience in the markets with you. They are here to help you turn your desire for more into a reality.

## OUR TRAINING ACADEMY INSTRUCTORS: YOUR OWN PERSONAL RICH DADS



"The whole system of buying and selling stocks through a traditional broker is a dinosaur. If you have a laptop with a connection to the Internet, you can beat the Street and the slower investors from anywhere in the world."

- Robert Kiyosaki

Your STOCK SUCCESS Training instructors are trainers in the true sense of the word. We don't hand you a book and send you on your way, and we don't believe in teaching abstract "theory." Instead, our trainers are able to teach you "reality" from their years of experience trading in the financial markets. We stay by your side as you learn to make the right decisions for yourself – the best decisions for the money you wish to invest, the risk level you are comfortable with, and your ultimate goal.

## EDUCATION: THE GREAT ENABLER

Remember, the only thing separating you from those who have made millions in the stock market is that they have already mastered the markets. They benefit from this type of education and experience everyday. By increasing your financial IQ and gaining real-world knowledge of the financial markets, you can do this too!

## GETTING STARTED

We know you're excited and ready to go! However, we have strategically planned your STOCK SUCCESS Training Academy to take place several weeks after you attend the free preview program. This gives you sufficient time to absorb the information you learned during the free preview and to properly prepare for the live 3-Day Training Academy.

Your 3-Day Training is comprehensive. It will cover everything from thinking like the rich think to developing a personal plan and executing on that plan. It is important for you to get a good night's sleep the night before your training begins, and be sure to arrive at least 15 minutes prior to the scheduled start time. All you need to bring is a notebook, a few pens, and lots of motivation and excitement for everything you are going to learn over the course of these 3 days!

# WHAT YOU'LL LEARN AT THE STOCK SUCCESS TRAINING

The STOCK SUCCESS Training Academy will share with you the powerful secrets the rich teach their kids – how to make your money work for you so you don't need to work for your money! Not only will we teach you the Rich Dad® mindset – the "why" of being rich – but we'll show you "how" to build your wealth by introducing you to specific instruments and strategies you can use to apply the Rich Dad principles.

This intensive, 3-Day Training curriculum focuses on establishing you as an educated investor. You will learn the importance of analyzing stocks before you buy them. We'll also show you how to better determine the direction and volatility of the markets and of the specific industry in which you are investing. This will help build your confidence, allowing you to get started quickly. We will then enhance your abilities by introducing additional "tools of the trade." By employing numerous strategies, you'll learn how you can create profit potential in every type of market.

The STOCK SUCCESS Training Academy will take you step-by-step through the mechanics of a real-time stock transaction. It covers everything from general market forecasting (in order to reduce your investing risks) to advanced technical analysis of stock examples and much, much more. You'll learn how to protect the stocks you already own, as well as how to take control of your retirement programs to maximize your returns with strategies used everyday by market pros.

We'll also introduce you to a wide variety of advanced investment strategies including covered calls, call and put options and LEAPS that will allow you to take a proactive approach to accumulating wealth and safeguarding your future. This hands-on, experiential training will allow you to find your own personal niche and investing style to best meet your needs.

By raising your financial IQ, you'll be able to use one or several trading strategies to meet your specific goals and achieve your idea of financial success. Become a long-term trader, a trend or even a swing trader… or combine several techniques to become a hybrid trader! Regardless, you'll leave the STOCK SUCCESS Training Academy armed with the knowledge and confidence to get started in the trading business.

## THE 3-DAY CURRICULUM WILL INCLUDE:

- The Rich Dad Mindset
- How to Understand Different Order Types
- Fundamental Stock Analysis
- Charting Basics
- How to Understand Trends and Indicators
- Volume and Understanding
- Momentum in the Market
- How to Reduce Risk in Your Trades
- How to Identify the Best Entry Point
- How to Protect Yourself with Stops and Exits
- Options Basics
- Contract Components
- Put and Call Options
- L.E.A.P.S.
- The Time Value of Options
- Cash Flow with Covered Calls
- How to Build Your Trading Plan
- How to Analyze the Broad Markets
- How to Scan for the Best Opportunities
- Broad Market Trading with Indexes
- How to Leverage with Margin
- How to Set Up and Execute Your Daily Plan



## "Knowledge is the New Money"

*- Robert Kiyosaki*

RICH <span>DAD</span>
**EDUCATION**

1-800-978-8068
www.RichDadStock.com

Robert Kiyosaki will not attend this event

The company's products are for educational use only. The company is not a registered investment advisor or a broker-dealer. Stocks and Options trading have large potential rewards but also involve large potential risks. Additional products and services will be offered for sale. © 2006-2010 Rich Dad Education. All rights reserved. CASHFLOW and The Rich Dad word mark and logos are owned by Rich Dad Operating Co., LLC and are used with permission.
10RDES0020 V2 07-10

# EXHIBIT B

# RICH ◤ DAD™
## EDUCATION

| USA | FULL | ON-SITE |
|---|---|---|
| **CLASSIC**<br>Two Training Programs | $10,989 | $8,990 |
| **GOLD**<br>Four Training Programs | $21,969 | $14,990 |
| **PROFESSIONAL TRADER**<br>Two Training Programs<br>Personal Mentor Program | $20,979 | $17,990 |
| **PLATINUM**<br>Four Training Programs<br>Personal Mentor Program | $31,959 | $23,990 |
| **ACADEMY ELITE**<br>Six Training Programs<br>Personal Mentor Program<br>2 Years of Trading Lab (Free) | $42,939 | $29,990 |
| **ACADEMY WEALTH BUILDER**<br>Eight Training Programs<br>Personal Mentor Program<br>2 years of Trading Lab (free) | $53,919 | $34,990 |
| **WEALTH MASTER**<br>Ten Training Programs<br>Personal Mentor Program<br>2 years of Trading Lab (free) | $64,899 | $39,490 |

© 2010  Tigrent Brands Inc. All Rights Reserved. Tigrent Learning is a trademark of Tigrent Brands Inc. and is use with permission.

# Flow of Advanced Training:

- **On-Demand training introduction:** Each advanced class contains over 50 hours of training. That curriculum is condensed down to a video format and placed on a private website for your access 24/7. Watch it as many times as needed.

- **E-Learning webinar:** The training now moves to a live on line class over the internet. For 6 weeks, one night a week you will meet with a class of students just like you with a live instructor where you can ask questions and get answers.

- **Live, in person three day Refresher:** This session will bring together all the class work study you've done to this point.

- **Meeting with your Personal Trading Mentor:** You are now ready to meet one on one with your Trading Mentor. You will spend 3 full days, one on one with your Mentor setting up your trading platform based on your specific goals and expectations. Once that is completed and put into action you will have access to your Mentor via Email for the remainder of your contract period.

- **Trading Labs:** Once a week for two full years you will attend a webinar conducted by one of Robert Kiyosaki's stock mentors setting you up for the trading week and reviewing your personal trades with you.

**EXHIBIT C**

# RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND HOLD HARMLESS AGREEMENT

---

DESCRIPTION AND LOCATION OF SCHEDULED EVENT(S)

I _____ attended a 3-day basic stock and option trading class through Robert Kiyosaki's Rich Dad Stock Success System. The class was instructed by Scott Stewart. Mr. Stewart instructed us on day one of the class that it was not realistic or feasible to master the knowledge required to fully master the trading strategies introduced in this basic class in only 3 days. It was explained to me that for most individuals it takes 3 to 6 months of study, practice and training along with some handholding via a mentorship to achieve a level 4 competency of these strategies.

---

After discussing this with Mr. Stewart and Robert Kiyosaki's Success Coaches I have decided that I do not need further knowledge or instruction with the trading strategies that were introduced in my 3 day class and I am willing to assume all the risk of loss by going forward with my trading WITHOUT gaining the recommended training.

I further acknowledge that Mr. Stewart and the Success Coaches advised me of the fact that they were not aware of any students who had taken this path and achieved the results that were stated as possible in the 3 day workshop.

I hereby acknowledge that at this current time I do not know how to actually construct, place and manage the strategies that I was exposed to in this 3 day class however I am going to attempt to trade them anyway.

I do hereby verify that all the resulting after effects to my account values are not a reflection of Robert Kiyosaki, Scott Stewart or the Success Coaches. I do also hereby waive my rights to any dissatisfaction with the Rich Dad Stock Success System since I did not follow their recommendations for training, guidance or learning.

---

Signature                         Printed name                              Date