UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT CREWE and ROBERT MAURICE, on behalf of themselves and all others similarly situated,<br><br>                     Plaintiffs,<br><br>   Against<br><br>RICH DAD EDUCATION, LLC, RICH GLOBAL, LLC, RICH DAD OPERATING CO., LLC, CASHFLOW TECHNOLOGIES, INC., TIGRENT INC., TIGRENT LEARNING INC. f/k/a WEALTH INTELLIGENCE ACADEMY, INC., TIGRENT BRANDS INC., CHRISTOPHER BRIGGS, an individual, SCOTT STEWART, an individual, MARC HRISKO, an individual, WAYNE MORGAN, an individual, ROBERT KIYOSAKI, an individual, and DOES 1 through 50, inclusive.<br><br>                     Defendants. | CASE NO. 11-CIV-8301 (PAE) |

**<u>PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**PAGE(s)**

I. THIS COURT MUST DECIDE GATEWAY ISSUES CONCERNING THE ENFORCEABILITY OF THE ARBITRATION CLAUSE AND THE DELEGATION PROVISION .................................................................................. 1

II. THE ARBITRATION CLAUSE AND THE DELEGATION PROVISION ARE UNENFORCEABLE UNDER FEDERAL SUBSTANTIVE LAW AND FLORIDA'S UNCONSCIONABILITY STANDARD ............................................... 3

    A. The Arbitration Clause And Delegation Provision Violate The *Green Tree / Amex* Rule By Preventing Crewe From Vindicating His Claims.................................................................................................. 3

    B. The Arbitration Agreement And Delegation Provision Are Unenforceable Under Florida's Unconscionability Standard ................................... 6

        1. Procedural Unconscionability ........................................................... 6

        2. Substantive Unconscionability ........................................................... 7

            i. No In-Person Hearing ................................................................ 7

            ii. The Class Action Waiver ........................................................... 8

            iii. Limitations On Remedies ........................................................... 10

            iv. Violations Of JAMS Consumer Arbitration Policy Minimum Standards Of Procedural Fairness ................................... 11

            v. Violations Of AAA Consumer Due Process Protocol ......................... 12

III. THE COURT CANNOT SAVE THIS FATALLY FLAWED ARBITRATION CLAUSE BY RE-WRITING IT ............................................... 13

IV. MAURICE'S CLAIMS SHOULD REMAIN BEFORE THIS COURT BECAUSE THE FIRST-FILED RULE TRUMPS THE FORUM SELECTION CLAUSE UNDER *COMEDY PARTNERS* ................................................... 14

# TABLE OF AUTHORITIES

**PAGE(s)**

**CASES**

*Alterra Healthcare Corp. v. Linton*,
  953 So. 2d 574 (Fla. Dist. Ct. App. 2007) ................................................................ 10

*AT&T Mobility LLC v. Concepcion*,
  131 S.Ct. 1740 (2011) ........................................................................................ 8, 9, 10

*Citizens Bldg. of West Palm Beach, Inc. v. Western Union Tel. Co.*,
  120 F.2d 982 (5th Cir. 1941) ...................................................................................... 8

*Comedy Partners v. Street Players Holding Corp.*,
  34 F.Supp.2d 194 (S.D.N.Y. 1999)............................................................................ 15

*DiGiacomo v. Ex'pression Ctr. for New Media Inc.*,
  2008 WL 4239830 (N.D. Cal. 2008) .......................................................................... 3

*Fonte v. AT&T Wireless Services, Inc.*,
  903 So.2d 1019 (Fla. Dist. Ct. App. 2005) ................................................................. 6

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991).................................................................................................... 1

*Golden v. Mobil Oil Corp.*,
  882 F.2d 490 (11th Cir. 1989) .................................................................................... 7

*Hialeah Auto., LLC v. Basulto*,
  22 So.3d 586 (Fla. Dist. Ct. App. 2009) ................................................................... 10

*Holt v. O'Brien Imports of Fort Myers, Inc.*,
  862 So. 2d 87 (Fla. Dist. Ct. App. 2003) .................................................................. 11

*In re American Express Merchants Litig.*,
  2012 WL 1918412 (2d Cir. May 29, 2012) ................................................................ 1

*In re American Express Merchants Litig.*,
  554 F.3d 300 (2d. Cir. 2009)........................................................................... 1, 2, 3, 5

*In re American Express Merchants Litig.*,
  634 F.3d 187 (2d Cir. 2011)............................................................................. 1, 4, 10

*In re American Express Merchants Litig.*,
  667 F.2d 204 (2d Cir. 2012)................................................................................. 1, 9

*Kohl v. Bay Colony Club Condominium, Inc.*,
   398 So.2d 865 (Fla. Dist. Ct. App. 1981) .................................................................................. 7

*ManorCare Health Services, Inc. v. Stiehl*,
   22 So. 3d 96 (Fla. Dist. Ct. App. 2009) .................................................................................. 10

*McKenzie v. Betts*,
   55 So.3d 615 (Fla. Dist. Ct. App. Feb. 2, 2011) ....................................................................... 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) .................................................................................................................. 1

*Murphy v. Courtesy Ford LLC*,
   944 So.2d 1131 (Fla. Dist. Ct. App. 2006) ............................................................................... 7

*Powertel Inc. v. Bexley*,
   743 So.2d 570 (Fla. Dist. Ct. App. 1999) .................................................................. 5, 7, 8, 10

*Rent-A-Ctr., W., Inc. v. Jackson*,
   130 S.Ct. 2772 (2010) ........................................................................................................... 1, 2

*Reuter v. Davis*,
   2006 WL 3743016, (Fla. Cir. Ct. Dec. 12, 2006) ..................................................................... 8

*Romano v. Manor Care, Inc.*,
   861 So.2d 59 (Fla. Dist. Ct. App. 2003) ................................................................................... 6

*SA-PG-Ocala, L.L.C. v. Stokes*,
   935 So. 2d 1242 (Fla. Dist. Ct. App. 2006) ............................................................................ 10

*Shearson/American Express, Inc. v. McMahon*
    482 U.S. 220 (1987) ................................................................................................................. 1

*Steinhardt v. Rudolph*,
   422 So.2d 884 (Fla. Dist. Ct. App. 1982) .............................................................................. 6, 7

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   130 S.Ct. 1758 L.Ed.2d 605 (2010) ............................................................................... 1, 9, 10

**STATUTES**

15 U.S.C. § 15(a) ............................................................................................................................ 5

28 U.S.C. § 2201-02 ....................................................................................................................... 5

Fla. Stat. § 501.2105 ...................................................................................................................... 5

Plaintiffs answer the questions posed in the Court's May 24, 2012 Order as follows:

## I. THIS COURT MUST DECIDE GATEWAY ISSUES CONCERNING THE ENFORCEABILITY OF THE ARBITRATION CLAUSE AND THE DELEGATION PROVISION

The Court's first question is whether the arbitration provision "'clearly and unmistakably,' *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010) delegate[s] the issue of unconscionability to the arbitrator?" 5/24/12 Order at 1. The answer is no. This Court – and not an arbitrator – must decide all gateway issues concerning the enforceability of the arbitration clause, including its delegation provision.

First, Crewe contends the arbitration agreement and the delegation provision in the dispute resolution section are unenforceable under both the vindication of statutory rights doctrine and because they are unconscionable. Although these two doctrines are often conflated, they are distinct. *See, e.g.*, *In re American Express Merchants Litig.*, 554 F.3d 300, 320 (2d. Cir. 2009) (*Amex I*) (distinguishing "findings of unconscionability under state law" from "a vindication of statutory rights analysis, which is part of the federal substantive law of arbitrability").[1] *See also Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000) (holding an agreement requiring mandatory arbitration of state or federal statutory claims is enforceable only "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.").[2] The vindication of statutory rights doctrine is based on the recognition

---

[1] On May 3, 2010, the Supreme Court granted Amex's writ for certiorari in *Amex I*, vacating and remanding for reconsideration in light of its decision in *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010). After reconsideration, the Second Circuit re-affirmed its analysis in two subsequent opinions, *In re American Express Merchants Litig.*, 634 F.3d 187 (2d Cir. 2011) (*Amex II*), and *In re American Express Merchants Litig.*, 667 F.2d 204 (2d Cir. 2012) (*Amex III*), and denied *en banc* review in *In re American Express Merchants Litig.*, 2012 WL 1918412 (2d Cir. May 29, 2012) (*Amex IV*).

[2] *See also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (same); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985) (same); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 238 (1987) (permitting arbitration of Exchange Act claims based on a finding that arbitration would be "adequate to vindicate Exchange Act rights").

1

that the terms of an arbitration agreement may give a defendant "de facto immunity" from liability "by removing the plaintiffs' only reasonably feasible means of recovery." *Amex I*, 554 F.3d at 320. An arbitration clause that attempts to delegate that issue to the arbitrator would create a chicken-and-egg problem whereby the question of the enforcement of a cost-prohibitive or otherwise exculpatory arbitration agreement is delegated to an arbitrator, but the party challenging the agreement is deterred from reaching an arbitrator by the prohibitive costs. Such a delegation was explicitly disapproved in *Amex I*. *See* 554 F.3d at 310-11 ("the district court erred in holding that the question of the class action waiver's enforceability is a matter for the arbitrator, not the court"). We have found no reported cases where the question of enforceability under the *Green Tree / Amex* rule was permitted to be delegated to an arbitrator.

Second, the arbitration clause does not "clearly and unmistakably," delegate the issue of enforceability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010). The contract language appears at first blush to contain such a delegation, stating: "All determinations as to the scope, enforceability and effect of this Dispute Resolution section shall be decided by the arbitrator and not by a court." May Decl. Exh. 1. But the arbitration clause also states that "[t]he arbitrator shall have no authority or power to modify or alter any term or condition of the Agreement or these Terms and Conditions or to render any award that by its terms has the effect of altering or modifying any express term or condition of the Agreement or these Terms and Conditions." *Id.* This second term negates the first insofar as it expressly prohibits the arbitrator from deciding any term of the agreement is unenforceable. Read together, these terms lead to the absurd result that the question of enforceability is delegated to an arbitrator who is then powerless to decide it.

Third, the delegation language here is almost identical to the contract language at issue in *DiGiacomo v. Ex'pression Ctr. for New Media Inc.*, 2008 WL 4239830, at *7 (N.D. Cal.

2

2008) ("All determinations as to scope, enforceability of this Arbitration Agreement shall be determined by the Arbitrator, and not by a court."). The *DiGiacomo* court held this language did not "clearly and unmistakably" delegate questions of enforceability to the arbitrator, *id.* at *6, and held "it is for the court, not the arbitrator, to decide in the first instance whether the present dispute is to be resolved through arbitration," *id.* at *7.

## II. THE ARBITRATION CLAUSE AND THE DELEGATION PROVISION ARE UNENFORCEABLE UNDER FEDERAL SUBSTANTIVE LAW AND FLORIDA'S UNCONSCIONABILITY STANDARD

The Court's question 1b asks what law applies to Crewe's challenge to the enforceability of the arbitration clause. 5/24/12 Order at 2. Crewe's claim that the arbitration agreement and its delegation provision would prevent the effective vindication of his claims is governed by the federal substantive law of arbitrability. *See Amex I*, 554 F.3d at 320. Crewe's claim that the agreement and its delegation provision are unconscionable is governed by Florida law, because the contract includes a choice of law provision in favor of Florida law.

### A. The Arbitration Clause And Delegation Provision Violate The *Green Tree / Amex* Rule By Preventing Crewe From Vindicating His Claims

An agreement requiring mandatory arbitration is enforceable only "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000). *See also* footnote 2, *supra*. *Green Tree* recognized that "large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum." 531 U.S. at 90. Under *Green Tree*, where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

The Second Circuit recently applied *Green Tree* in the series of *Amex* cases. *See supra* footnote 1 and accompanying text. In *Amex*, a putative class of merchants asserted antitrust

3

claims against American Express, which then moved to compel arbitration under an agreement that prohibited class actions. The merchants opposed the motion on the ground that individual arbitration would be cost-prohibitive, and submitted an affidavit from an economist, Gary L. French, Ph.D., stating that it would be economically irrational for a merchant to pursue individual arbitration where "the likely costs and complexity of an expert economic study concerning liability and damages" would exceed any individual merchant's recovery. *Amex II*, 634 F.3d at 198. Based on Dr. French's testimony, the Second Circuit held "the cost of plaintiffs' individually arbitrating their dispute with Amex would be prohibitive, effectively depriving plaintiffs of the statutory protections of the antitrust laws." *Id.* at 197.

With NAF unavailable, the only alternate forum defendants have proposed is JAMS. The JAMS filing fee for Crewe's $199 claim would be $250. *See* JAMS Consumer Arbitration Policy Minimum Standards Of Procedural Fairness ¶ 7 ($250 filing fee), Marchese Decl. Exh. A. That filing fee alone makes it economically irrational for Crewe to arbitrate his claim on an individual basis. No competent lawyer would represent Crewe on that claim. And under the loser-pays provision[3] he would be exposed to liability for defendants' attorney's fees, which will likely exceed the amount of his claim by several orders of magnitude.

During the May 24 hearing defense counsel suggested that the loser-pays fee-shifting provision in the arbitration clause ameliorates these problems, 5/24/12 Hearing Tr. at 48:25-49:7, and the Court has asked for case authority involving similar facts including "the fact of a fee-shifting provision favoring the prevailing party." 5/24/12 Order at 2. The Court need look no further than *Amex*, which invalidated an arbitration agreement based on excessive arbitral costs where the underlying antitrust statute provides for a mandatory award of triple damages plus

---

[3] May Decl. Exh. 1 ("In any arbitration or court proceeding to enforce the terms of this paragraph or to enforce the result of any arbitration conducted hereunder, the prevailing party shall be entitled to obtain all reasonable costs, including its reasonable attorney fees at the trial and appellate level.").

attorney's fees to a prevailing plaintiff.  *See* 15 U.S.C. § 15(a) ("any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws … shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee").  If these enhanced remedies under the antitrust laws did not save the arbitration agreement in *Amex*, the loser-pays fee-shifting provision cannot save the agreement here.  *See Amex I*, 5554 F.3d at 317 ("Even with respect to reasonable attorney's fees, which are shifted under Section 4 of the Clayton Act, the plaintiffs must include the risk of losing, and thereby not recovering any fees, in their evaluation of their suit's potential costs.").  *See also Powertel Inc. v. Bexley*, 743 So.2d 570 (Fla. Dist. Ct. App. 1999) (invalidating arbitration agreement with class action waiver based on excessive costs where underlying claim for violation of Florida's Deceptive and Unfair Trade Practices Act provided for fee-shifting to the prevailing party).[4]  Only a fanatic or a lunatic would incur substantial attorney's fees to pursue a $199 claim, especially where he risks paying defendants' fees, too, if he does not prevail.

Even leaving aside the issue of excessive costs, the terms of the arbitration agreement, including the delegation provision, make it impossible for Crewe to vindicate his federal statutory claim.  Count I of Crewe's complaint seeks a declaration pursuant to 28 U.S.C. § 2201-02 that the arbitration provision is unenforceable.  Amended Complaint ¶ 157.  But the terms of the arbitration clause prohibit the arbitrator from making such a ruling.[5]

The arbitration clause would make it impossible for Crewe to vindicate his other claims as well.  It prohibits Crewe from having an in-person hearing by providing the arbitration "shall be held by submission of documents, by telephone, or online."  The arbitration clause does not

---

[4] Fla. Stat. § 501.2105 provides "the prevailing party … may receive his or her reasonable attorney's fees and costs from the nonprevailing party."

[5] *See* May Decl. Exh. 1 ("The arbitrator shall have no authority or power to modify or alter any term or condition of the Agreement or these Terms and Conditions or to render any award that by its terms has the effect of altering or modifying any express term or condition of the Agreement or these Terms and Conditions.").

5

allow the arbitrator discretion to have an in-person hearing, *see supra footnote 5*, and even the "telephone or online" hearing that is available would be limited to 60 minutes by NAF Rule 34B. That would permit 7 minutes and 30 seconds of hearing time at most for each of the 8 counts in Crewe's complaint. If the time were split evenly between the two sides, Crewe would get 3 minutes and 45 seconds to present each of his claims. This is an additional independent basis for finding the agreement and the delegation provision unenforceable under the *Green Tree / Amex* standard, because Crewe, as the party bearing the burden of proof, would be unable to effectively present his claims in the limited allotted time.

### B. The Arbitration Agreement And Delegation Provision Are Unenforceable Under Florida's Unconscionability Standard

Florida courts evaluate both procedural and substantive unconcscionability using a balancing or sliding scale approach. *See Steinhardt v. Rudolph,* 422 So.2d 884, 889 (Fla. Dist. Ct. App. 1982) (stating that most courts take a "balancing approach" requiring "a certain quantum of procedural plus a certain quantum of substantive unconscionability"); *Fonte v. AT&T Wireless Services, Inc.,* 903 So.2d 1019, 1025 (Fla. Dist. Ct. App. 2005) ("The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability. But they need not be present in the same degree."); *Romano v. Manor Care, Inc.,* 861 So.2d 59, 62 (Fla. Dist. Ct. App. 2003) (stating "[e]ssentially a sliding scale is invoked" and "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa").

#### 1. Procedural Unconscionability

To determine whether a contract is procedurally unconscionable under Florida law, courts must look to: (1) the manner in which the contract was entered into; (2) the relative bargaining

power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *See Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. Dist. Ct. App. 1999); *Murphy v. Courtesy Ford LLC,* 944 So.2d 1131, 1134 (Fla. Dist. Ct. App. 2006). The facts recited in the Crewe declaration, and at pages 21 through 25 of plaintiffs' opposition brief (Dkt. No. 40) establish procedural unconscionability under this standard.[6]

### 2. Substantive Unconscionability

Under Florida law, substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are "unreasonable and unfair." *Powertel,* 743 So.2d at 574; *Kohl v. Bay Colony Club Condominium, Inc.,* 398 So.2d 865, 868 (Fla. Dist. Ct. App. 1981); *accord Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989) (stating that under Florida law, "[s]ubstantive unconscionability exists when the terms of the contractual provision are unreasonable and unfair"). Substantive unconscionability focuses "directly on those terms of the contract itself which amount to an outrageous degree of unfairness to the same contracting party." *Steinhardt v. Rudolph*, 422 So.2d 884, 889 (Fla. Dist. Ct. App. 1982).

### i. No In-Person Hearing

As explained above, the arbitration clause prohibits any in-person hearing, and together with NAF Rule 34B would limit even a telephonic hearing to only 60 minutes. These

---

[6] *See* Crewe Decl. ¶ 14 ("The Student Agreement does not expressly state that it includes an arbitration provision. The arbitration provision is hidden in a separate document …."); *id.* ¶ 15 ("I had to sign the Student Agreement right there on line because the Free Workshop was ending …. I felt pressured to sign the Student Agreement as quickly as possible because other attendees were waiting to enroll on line behind me, and the Rich Dad staffers were trying to move the lines along quickly."); *id.* ¶ 16 (describing how the Rich Dad staffer "processed payment on my credit card immediately" before Crewe had signed the Student Agreement and before he had been provided with the separate document containing the arbitration clause); *id.* ¶ 19 ("The separate Terms and Conditions [containing the arbitration clause] was one of many documents placed in a folder that was inside a bag of Rich Dad materials that the Rich Dad staffer handed to me from behind the registration kiosk after I had paid and signed the Student Agreement.").

restrictions weigh in favor of a finding of substantive unconscionability under Florida law. *See Citizens Bldg. of West Palm Beach, Inc. v. Western Union Tel. Co.*, 120 F.2d 982, 984 (5th Cir. 1941) (vacating arbitration award that was rendered without a hearing, stating that even in arbitration, "the parties are entitled to be heard . . . upon the subject matter in dispute" ).[7]

### ii.   The Class Action Waiver

The arbitration clause includes a class action waiver. Courts applying Florida law have held similar class action waivers substantively unconscionable and unenforceable. *See Powertel, Inc. v. Bexley*, 743 So. 2d 570, 576 (Fla. Dist. Ct. App. 1999) (holding a class action waiver substantively unconscionable because it "effectively removes Powertel's exposure to any remedy that could be pursued on behalf of a class of consumers" where "[t]he potential claims are too small to litigate individually"); *Reuter v. Davis*, 2006 WL 3743016, at *4-5 (Fla. Cir. Ct. Dec. 12, 2006) (holding waiver to be substantively unconscionable where "it would be virtually impossible for [plaintiff], or anyone in a similar position, to obtain competent individual representation for the types of claims brought here," and where "[e]nforcement of the class action waivers ... would be tantamount to depriving Ms. Reuter of any claims against Check 'n Go"); *McKenzie v. Betts*, 55 So.3d 615, 623 (Fla. Dist. Ct. App. Feb. 2, 2011) (finding class action waiver in arbitration agreement was unenforceable because it denied consumers any reasonable avenue for relief, because attorneys would not represent consumers in individual small claims suits).

The Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011) does not address Florida's unconscionability standard. *Concepcion* is also readily

---

[7] The Court posed the question whether the arbitration clause is substantively unconscionable assuming "the arbitration is conducted under the rules of the NAF." 5/24/12 Order at 2. The answer is yes, for all of the reasons stated in the text.

8

distinguishable on its facts because the *Concepcion* arbitration agreement was markedly different from defendant's arbitration clause. *See, e.g.*, *Amex III*, 667 F.3d at 214 ("What *Stolt-Nielsen* and *Concepcion* do not do is require that all class action waivers be deemed per se enforceable."). For example, the *Concepcion* agreement provided that AT&T "would pay all costs for [arbitration of] nonfrivolous claims." 131 S.Ct. at 1744. The arbitration clause here requires Crewe to pay a filing fee and other costs. The *Concepcion* agreement provided "the customer may choose whether the arbitration proceeds in person, by telephone, or based only on submissions." *Id.* The arbitration clause here prohibits any in-person hearing. The *Concepcion* agreement permitted the customer "to bring a claim in small claims court in lieu of arbitration." *Id.* Not so here. The *Concepcion* agreement provided "the arbitrator may award any form of individual relief, including injunctions and presumably punitive damages." *Id.* The arbitration clause here prohibits the arbitrator from awarding any "indirect and/or consequential damages," and limits Crewe's "maximum award" to "the amount paid by you to [Rich Dad] under the Agreement." The *Concepcion* agreement precluded AT&T from "any ability to seek reimbursement of its attorney's fees." *Id.* The agreement here includes a loser-pays rule that could make Crewe liable for defendants' attorney's fees. The *Concepcion* agreement included incentives designed to encourage customers to arbitrate small claims by providing a "guaranteed minimum recovery" of $7,500 plus double attorney's fees to customers that prevail at arbitration. *Id.* at 1744 & n.3. The agreement here provides no such incentives for Crewe. The *Concepcion* agreement provided an arbitration process that was cost-free, and "likely to prompt full or even excess payment to the customer." *Id.* at 1745. The agreement here is quite the opposite. It would limit Crewe's potential recovery to $199, impose arbitral fees exceeding that amount, expose Crewe to liability for Defendants' attorney's fees which are likely to exceed the value of

9

Crewe's claim by several orders of magnitude, and it would deny Crewe the right to an in-person hearing. *Concepcion* has no relevance to an agreement like this.[8]

### iii.     Limitations On Remedies

The arbitration clause prohibits the arbitrator from awarding any "indirect and/or consequential damages," and limits the "maximum award" to "the amount paid by you to us under the Agreement." May Decl. Exh. 1. Thus, the agreement also does not provide for punitive damages regardless of how outrageous defendants' conduct might be. Similar limitations on remedies have been held substantively unconscionable by Florida courts. *See Powertel*, 743 So. 2d 576 ("One indicator of substantive unconscionability is that the agreement requires customers to give up other legal remedies."); *Alterra Healthcare Corp. v. Linton*, 953 So. 2d 574, 578 (Fla. Dist. Ct. App. 2007) (holding arbitration clause capping damages void as against public policy); *ManorCare Health Services, Inc. v. Stiehl*, 22 So. 3d 96, 99 (Fla. Dist. Ct. App. 2009) ("[C]ourts in this state have specifically found arbitration agreements containing remedial limitations … to render an agreement to arbitrate void and unenforceable."); *SA-PG-Ocala, L.L.C. v. Stokes*, 935 So. 2d 1242, 1243 (Fla. Dist. Ct. App. 2006) (holding arbitration clause limiting recoverable damages violated the state nursing home act and Florida's public policy); *Hialeah Auto., LLC v. Basulto*, 22 So.3d 586, 590 (Fla. Dist. Ct. App. 2009) ("We agree with the trial court that it is unconscionable to employ an arbitration agreement to obtain a waiver of rights to which the signatory would otherwise be entitled under common law or statutory law."). Further, any attempt to limit the remedies available under FDUTPA is contrary

---

[8] If the class action waiver provision is held unenforceable, the only proper remedy is to hold the arbitration agreement unenforceable in its entirety and to deny the motion to compel arbitration. The court cannot sever the provision and order class arbitration. *See, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1775 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so.") (emphasis in the original); *Amex II*, 634 F.3d 187, 200 (2d Cir. 2011) ("*Stolt–Nielsen* plainly precludes us from ordering class-wide arbitration").

to Florida's public policy. *See, e.g.*, *Holt v. O'Brien Imports of Fort Myers, Inc.*, 862 So. 2d 87, 89 (Fla. Dist. Ct. App. 2003) ("[A]n individual cannot waive the protection of a statute that is designed to protect both the public and the individual").

### iv. Violations Of JAMS Consumer Arbitration Policy Minimum Standards Of Procedural Fairness

The only alternate arbitral forum defendants proposed is JAMS.[9]  However, JAMS will not administer this case because the arbitration clause violates JAMS Consumer Arbitration Policy Minimum Standards Of Procedural Fairness.  *See* Marchese Decl. Exh. A.  Those minimum standards require that "no party shall be precluded from seeking remedies in small claims court."  *Id.* ¶ 1(B).  The arbitration clause and delegation provision violate that standard by requiring all disputes to be resolved "exclusively and finally by binding arbitration" without any exception permitting resort to small claims court.  The JAMS minimum standards also require that "remedies that would otherwise be available under federal, state and local law must remain available" in arbitration.  *Id.* ¶ 3.  The arbitration clause violates that minimum standard by prohibiting the arbitrator from awarding any "indirect and/or consequential damages," and also by limiting the "maximum award" to "the amount paid by you to us under the Agreement." JAMS minimum standards also require that "[t]he consumer must have a right to an in-person hearing in his or her hometown area."  *Id.* ¶ 5.  The arbitration clause violates that minimum standard by prohibiting any in-person hearing, and stating the arbitration "shall be held by submission of documents, by telephone, or online."  These violations of the JAMS Consumer Arbitration Policy Minimum Standards Of Procedural Fairness further illustrate the substantive unconscionability of the arbitration clause and delegation provision.  They also demonstrate that an order directing Crewe to arbitrate before JAMS would be a futile gesture – because Crewe

---

[9] The Court's 5/22/12 Order directed the parties to identify 2 alternate arbitral fora.  Defendants identified only one – JAMS.  *See* 5/24/12 Hearing Tr. at 27, and Court Exhibit A.

certainly would not pay the JAMS filing fee, *id.* ¶ 7 (JAMS $250 filing fee), to arbitrate his $199 claim, and also because JAMS would not accept the case even if he did. *See id.* ("JAMS will administer arbitrations pursuant to mandatory pre-dispute arbitration clauses between companies and consumers <u>only if</u> the contract arbitration clause and specified applicable rules comply with the following minimum standards of fairness."). (underlining added).

### v. **Violations Of AAA Consumer Due Process Protocol**

Another alternative arbitral forum that might be considered is the American Arbitration Association (AAA). However, AAA will not administer this case because the arbitration clause and delegation provision violate the AAA Consumer Due Process Protocol (CDPP). *See* Marchese Decl. Exh. B. Principle 5 of the CDPP requires the arbitration clause to "make it clear that all parties retain the right to seek relief in a small claims court." *Id.* The arbitration clause and delegation provision violate Principle 5 by requiring all disputes to be resolved "exclusively and finally by binding arbitration" without any exception permitting resort to small claims court. Principle 6 of the CDPP requires the business imposing the arbitration agreement to ensure the arbitration will "entail reasonable costs to Consumers … [which] may require the [business] to subsidize the process." *Id.* The arbitration clause and delegation provision violate Principle 6 because they would impose excessive costs on Crewe, including filing and administrative fees, and other costs that would exceed the amount of his $199 claim even where Crewe merely seeks to challenge the enforceability of the terms. Principle 11 of the CDPP requires "clear and adequate notice of the arbitration provision and its consequences," along with "notice of the option to make use of applicable small claims court procedures as an alternative to binding arbitration." *Id.* The arbitration clause violates this standard because it was not provided to Crewe until after his credit card had been charged, and was disclosed in a manner that was

12

neither clear nor adequate.[10]  And, of course, there is no notice of a small claims court option, which violates CDPP Principle 11, as well as Principle 5, as explained above.  Principle 12 of the CDPP requires the arbitrator to have discretion "to require a face-to-face hearing upon the request of a party."  Marchese Decl. Exh. B.  The arbitration clause violates Principle 12 by providing only for a telephonic hearing, and it does not allow the arbitrator discretion to have an in-person hearing.  Principle 14 of the CDPP requires that the arbitrator "be empowered to grant whatever relief would be available in court under law or in equity."  *Id.*  The arbitration clause violates Principle 14 by prohibiting the arbitrator from awarding any "indirect and/or consequential damages," and also by limiting the "maximum award" to "the amount paid by you to us under the Agreement."  These violations of AAA's CDPP further illustrate the substantive unconscionability of the arbitration clause and the delegation provision.  They also demonstrate that an order directing Crewe to arbitrate before AAA would be a futile gesture – because Crewe certainly would not pay the AAA filing fee and other fees that would exceed the amount of his $199 claim, and also because AAA would not accept the case even if he did.[11]

### III. THE COURT CANNOT SAVE THIS FATALLY FLAWED ARBITRATION CLAUSE BY RE-WRITING IT

This arbitration clause has so many glaring defects that it is impossible for the Court to enforce it as written.  It provides for NAF to administer the arbitration, but NAF is banned from doing so.  It specifies rules – the NAF Code of Procedure – which by their terms cannot be

---

[10] *See supra* footnote 6.

[11] *See* Marchese Decl. ¶ 2 ("AAA does not accept cases for administration where the arbitration agreement does not meet the requirements of the CDPP.  On the contrary, businesses whose arbitration agreements violate the CDPP are advised by AAA that their arbitrations will not be administered unless and until the businesses revise their agreements to conform to the CDPP."); *see also* Marchese Decl. Exhs. C, D, and E (examples of AAA correspondence refusing to administer arbitrations based on violations of the CDPP).

applied by another forum.[12] It prohibits an in-person hearing, and limits a telephonic hearing to 60 minutes, making it impossible for Crewe to present his claims in the time allotted. And it prohibits the arbitrator from changing any of these terms.

For the Court to order Crewe's case to arbitration, it would have to find an arbitral forum that will agree to administer a farce. The only alternate forum that defendants propose, JAMS, certainly will not. Nor will AAA. The Court would have to search high and low for some other arbitral forum that lacks the minimal standards and procedural safeguards that JAMS and AAA insist upon. Or, the Court would have to fundamentally re-write so many of the terms of the agreement that any eventual arbitration would bear no resemblance to the original agreement.

Other than engaging in a free-style exercise of unfettered discretion, what basis would the Court have for selecting among other available arbitral fora? Or determining what rules would apply? Or the extent of the arbitrator's powers? Or whether the arbitrator should have the authority to conduct an in-person hearing? Or any hearing that exceeds 60 minutes? The Court would literally have to fabricate an arbitration process from whole cloth – a scenario fundamentally at odds with the FAA. *See, e.g.*, *Stolt-Nielsen*, 130 S. Ct. at 1773-74 [T]he central or 'primary' purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms. … [C]ourts and arbitrators must give effect to the contractual rights and expectations of the parties.") (internal quotation marks omitted).

## IV. MAURICE'S CLAIMS SHOULD REMAIN BEFORE THIS COURT BECAUSE THE FIRST-FILED RULE TRUMPS THE FORUM SELECTION CLAUSE UNDER *COMEDY PARTNERS*

The court asked "Assuming that the Court finds that Maurice entered into a binding forum-selection clause that requires him to bring suit in the State of Florida, is there authority

---

[12] Rule 1A of the NAF Code of Procedure provides "This Code shall be administered <u>only</u> by the National Arbitration Forum or by any entity or individual providing administrative services by agreement with the National Arbitration Forum." May Decl. Exh. 2 (Dkt. No. 33-2) (underlining added).

14

under the first-filed doctrine, as plaintiffs have argued, that permits Maurice's lawsuit nevertheless to proceed in New York because Crewe's case was first filed there?" 5/24/12 Order at 3. The answer is yes. Judge Rakoff's decision in *Comedy Partners v. Street Players Holding Corp.*, 34 F.Supp.2d 194 (S.D.N.Y. 1999) is directly on point, holding that the first-filed rule trumped the application of a forum selection clause. *Id.* at 197 ("a mandatory forum selection clause is a 'significant factor' in the court's calculus, but one that is not necessarily dispositive").

The Court also asked "what factors may the Court consider in deciding whether to permit this?" 5/24/12 Hearing Tr. at 3. Judge Rakoff's decision in *Comedy Partners* identifies several factors, including the "balance of convenience analysis under Section 1404," *id.* at 196 n.1, whether the first-filed action was an improper "anticipatory filing," *id.* at 196, and "judicial economy and systemic integrity," *id.* at 197. The factors that weighed most heavily in Judge Rakoff's analysis were the potential "waste of judicial resources risk of inconsistent adjudication" from allowing parallel cases to go forward in two courts. *See id.* at 197. ("The first-filed rule is centrally concerned with preventing just these problems and it must therefore be applied in this case."). The same is true here.

Defendants have made no showing that Crewe's first-filed case was an improper anticipatory filing. Nor have they made any showing with respect to the § 1404 factors because they did not move to transfer. 5/24/12 Hearing Tr. at 22:18-23:6 ("MR. LEFFEL: We moved to dismiss. We didn't move to transfer."); *id.* at 55:13-19 ("MR. EDELMAN: I have simply made a dismissal motion under 12(b)(3)."). In sum, there are no grounds for departing from the first-filed rule as applied in *Comedy Partners*.

Dated: June 1, 2012                                    Respectfully submitted,

                                                           BURSOR & FISHER, P.A.

                                                           By:        /s/ Scott A. Bursor

Scott A. Bursor (SB-1141)
Joseph I. Marchese (JM-1976)
369 Lexington Ave, 10th Floor
New York, NY 10017-6506
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: scott@bursor.com
        jmarchese@bursor.com

*Plaintiffs' Interim Class Counsel*

16