**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ROBERT CREWE and ROBERT MAURICE,
on behalf of themselves and all others similarly
situated,

    **Plaintiffs**,

    **v.**

RICH DAD EDUCATION, LLC, RICH
GLOBAL, LLC, RICH DAD OPERATING
CO., LLC, CASHFLOW TECHNOLOGIES,
INC., TIGRENT INC., TIGRENT LEARNING
INC. f/k/a WEALTH INTELLIGENCE
ACADEMY, INC., TIGRENT BRANDS INC.,
CHRISTOPHER BRIGGS, an individual,
SCOTT STEWART, an individual, MARC
HRISKO, an individual, WAYNE MORGAN,
an individual, ROBERT KIYOSAKI, an
individual, and DOES #1-50, inclusive,

    **Defendants.**

Case No. 11 Civ. 8301 (PAE)

---

**SUPPLEMENTAL MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS BY THE TIGRENT DEFENDANTS**
**AND INDIVIDUAL DEFENDANTS CHRISTOPHER BRIGGS AND SCOTT STEWART**

**CROWELL & MORING LLP**
590 Madison Avenue
New York, New York 10022
(212) 223-4000

*Attorneys for Defendants Rich Dad*
*Education, LLC, Tigrent Inc., Tigrent*
*Learning Inc., Tigrent Brands Inc.,*
*Christopher Briggs, and Scott Stewart.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.     THE COURT SHOULD DELEGATE THE ISSUE OF UNCONSCIONABILITY TO
       THE ARBITRATOR UNDER SUPREME COURT LAW AND NAF RULES. ............... 2

       A.     The Delegation Provision Is "Clear And Unmistakable." ...................................... 2

       B.     The Court Should Appoint An Arbitrator To Determine Unconscionability. ........ 4

       C.     The Substitute Arbitrator May Apply NAF Rules Or Similar Public Codes.......... 5

II.    CREWE'S ARBITRATION CLAUSE IS NEITHER PROCEDURALLY NOR
       SUBSTANTIVELY UNCONSCIONABLE AND MUST BE ENFORCED. ................... 6

       A.     Florida Law Governs Crewe's Unconscionability Arguments. ............................. 7

       B.     Crewe Must Show Both Procedural And Substantive Unconscionability. ............. 7

              1.     Crewe Cannot Show Procedural Unconscionability. .................................. 8

              2.     Crewe Cannot Show Substantive Unconscionability. ............................... 9

III.   THE VINDICATION OF FEDERAL STATUTORY RIGHTS' DOCTRINE DOES NOT
       APPLY TO CREWE'S CLAIMS. ................................................................................. 12

       A.     Vindication Of Federal Statutory Rights Analysis Does Not Apply Because
              Crewe Alleges No Federal Statutory Claims. ....................................................... 12

       B.     Crewe's Claims Can Be Vindicated In Arbitration. ............................................ 13

CONCLUSION ................................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Artimus Const. Inc. v. U.S. Fid. & Guar. Co.*,
    No. 11 Civ. 1123 (PKC), 2011 U.S. Dist. LEXIS 49291 (S.D.N.Y. May 9, 2011) ...............13

*AT&T Mobility v. Concepcion*,
    131 S. Ct. 1740 (2011)...........................................................................................................10, 11

*Cap Gemini Ernst & Young, U.S., LLC v. Nackel*,
    346 F.3d 360 (2d Cir. 2003)..........................................................................................................7

*Citizens Bldg. of W. Palm Beach v. W. Union Tel. Co.*,
    120 F.2d 982 (5th Cir. 1941) ......................................................................................................10

*Contec Corp. v. Remote Solution Co.*,
    398 F.3d 205 (2d Cir. 2005)..........................................................................................................3

*Cruz v. Cingular Wireless, LLC*,
    648 F.3d 1205 (11th Cir. 2011) ..............................................................................................10, 11

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)......................................................................................................................5

*DiGiacomo v. Ex'pression Center for New Media, Inc.*,
    No. C 08-01768 MHP, 2008 U.S. Dist. LEXIS 70099 (N.D. Cal. Sept. 15, 2008)..................3

*Fieger v. Pitney Bowes Credit Corp.*,
    251 F.3d 386 (2d Cir. 2001).........................................................................................................7

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000).........................................................................................................13, 14, 15

*Howard v. Rent-A-Ctr., Inc.*,
    No. 1:10-CV-103, 2010 U.S. Dist. LEXIS 76342 (E.D. Tenn. July 28, 2010) ........................3

*In re Am. Express Merchs. Litig. (Amex 1)*
    554 F.3d 300 (2d Cir. 2009).................................................................................................12, 14

*In re Am. Express Merchs. Litig. (Amex II)*
    634 F.3d 187 (2d Cir. 2011)........................................................................................................12

*In re Am. Express Merchs. Litig. (Amex III)*
    667 F.3d 204 (2d Cir. 2012)................................................................................................ *passim*

*In re Am. Express Merchs. Litig.* (*Amex IV*)
  No. 06-1871-cv, 2012 U.S. App. LEXIS 10815 (2d Cir. May 29, 2012)......................1, 12, 15

*In re Joint E. & S. Dist. Asbestos Litig.*,
  14 F.3d 726 (2d Cir. 1993).......................................................................................13

*In re Salomon Inc. Shareholders Derivative Litig.*,
  68 F.3d 554 (2d. Cir. 1995).......................................................................................5

*Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)..........................................................................................12, 13

*Pendergast v. Sprint Nextel Corp.*,
  592 F.3d 1119 (11th Cir. 2010) ..................................................................................8

*Perry v. Thomas*,
  482 U.S. 483 (1987)................................................................................................7

*Rent-A-Center, West, Inc. v. Jackson*,
  130 S. Ct. 2772 (2010)..........................................................................................2, 4

*Rivera v. AT&T Corp.*,
  420 F. Supp. 2d 1312 (S.D. Fla. 2006) .........................................................................7

*Washington v. William Morris Endeavor Entm't, LLC.*,
  No. 10 Civ. 9647 (PKC) (JCF), 2011 U.S. Dist. LEXIS 81346 (S.D.N.Y. July 20,
  2011) .................................................................................................................3

**STATE CASES**

*Allied Van Lines, Inc. v. Bratton*,
  351 So. 2d 344 (Fla. 1977)........................................................................................9

*Belcher v. Kier*,
  558 So. 2d 1039 (Fla. Dist. Ct. App. 1990) ...................................................................9

*Bland v. Health Care & Ret. Corp. of Am.*,
  927 So. 2d 252 (Fla. Dist. Ct. App. 2006) ...............................................................6, 8, 9

*Carr v. Gateway, Inc.*,
  241 Ill. 2d 15 (2011) ...............................................................................................6

*Complete Interiors, Inc. v. Behan*,
  558 So. 2d 48 (Fla. Dist. Ct. App. 1990) ......................................................................7

*Fonte v. AT&T Wireless Servs., Inc.*,
  903 So. 2d 1019 (Fla. Dist. Ct. App. 2005) ...............................................................8, 11

*Gainesville Health Care Ctr., Inc. v. Weston*,
    857 So. 2d 278 (Fla. Dist. Ct. App. 2003) ...........................................................9

*Orkin Exterminating Co., Inc. v. Petsch*,
    872 So. 2d 259 (Fla. Dist. Ct. App. 2004) .........................................................11

*Powertel, Inc. v. Bexley*,
    743 So. 2d 570 (Fla. Dist. Ct. App. 1999) ...........................................................8

*Wright v. GGNSC Holdings LLC*,
    808 N.W.2d 114 (S.D. 2011) .............................................................................6

**FEDERAL STATUTES**

Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (2006) ........................................13

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.* (2006)

    9 U.S.C. § 2 ...................................................................................................4, 7

    9 U.S.C. §§ 3-4 (2006) ...............................................................................2, 4, 5

    9 U.S.C. § 5 ........................................................................................................5

**STATE STATUTES**

N.Y. C.P.L.R. § 7504 (2012) ........................................................................................5

Fla. Stat. § 501.211 (2012) .........................................................................................11

Fla. Stat. § 682.04 (2012) .............................................................................................5

Pursuant to this Court's May 24, 2012 Order ("May 24 Order"), defendants Rich Dad Education, LLC, Tigrent Inc., Tigrent Learning Inc., and Tigrent Brands Inc. (collectively, the "Tigrent Defendants"), along with individual defendants, Christopher Briggs and Scott Stewart, submit this Supplemental Memorandum of Law in further support of the motion to dismiss the lawsuit brought by plaintiffs Robert Crewe ("Crewe") and Robert Maurice ("Maurice").

## PRELIMINARY STATEMENT

Yet again plaintiffs change theories.  Initially, they sought to declare Crewe's arbitration clause unenforceable because of the unavailability of the designated forum, the National Arbitration Forum ("NAF"), and the alleged unconscionability of the Class Action Waiver and Costs Provisions.  Then, in opposing this motion, plaintiffs conceived a new argument, seeking to invalidate Crewe's overall agreement as invalid for purported lack of mutual assent.  The Tigrent Defendants' original and reply briefs, incorporated herein, clearly demonstrate that neither of plaintiffs' approaches have merit.

Now plaintiffs conjure a new theory, never mentioned in the Complaint or plaintiffs' opposition brief and not supported by law or fact.  Plaintiffs currently contend that Crewe's arbitration clause is unenforceable under the U.S. Supreme Court's vindication of federal statutory rights doctrine as recently addressed in Second Circuit decisions involving federal antitrust claims.  *See In re Am. Express Merchs. Litigation* (*Amex III*), 667 F.3d 204 (2d. Cir. 2012), *reh'g en banc denied*, *In re Am. Express Merchs. Litig.* (*Amex IV*), No. 06-1871-cv, 2012 U.S. App. LEXIS 10815 (2d Cir. May 29, 2012).  This last-ditch effort is patently absurd.  The Complaint is predicated entirely upon diversity jurisdiction, alleging only state law claims, none of which implicate a substantive federal statutory right.  Moreover, even were the recent *Amex* decisions to have any relevance to Crewe's claims – and the decisions themselves say they do

not – this is not a case of prohibitive costs deterring arbitration.  It may be a case that plaintiffs'

counsel has deemed practically unattractive but that is not a reason to declare Crewe's valid

arbitration clause unenforceable.

In short, plaintiffs have simply failed to provide a basis – under any of the theories they

have proffered – for overcoming dismissal and compelling arbitration under the Federal

Arbitration Act ("FAA").  9 U.S.C. §§ 3-4 (2006).  In that vein, we set out below answers to

questions about Crewe's arbitration clause in the May 24 Order.[1]

<u>**ARGUMENT**</u>

**I.   THE COURT SHOULD DELEGATE THE ISSUE OF UNCONSCIONABILITY
      TO THE ARBITRATOR UNDER SUPREME COURT LAW AND NAF RULES.**

**A.   <u>The Delegation Provision Is "Clear And Unmistakable."</u>**

Crewe's arbitration clause "clearly and unmistakably" delegates the issue of

unconscionability to the arbitrator under *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772,

2777 n.1 (2010).  (*See* Tig. Br. at 20-21; Tig. Reply Br. at 3.)  It contains an express Delegation

Provision that uses absolute and mandatory language, requiring that "[a]ll determinations as to

the scope, enforceability, and effect of this Dispute Resolution section shall be decided by the

arbitrator and not by a court."  (May Decl. Ex. 1.)  Crewe's arbitration clause also explicitly

incorporates "NAF Rules" including Rule 20(F)'s delegation authority, which provides that "[a]n

Arbitrator shall have the power to rule on all . . . objections relating to jurisdiction,

unconscionability, contract law, and enforceability of the Arbitration Agreement."  (May Decl.

Ex. 2.)  "The Second Circuit has 'held that when . . . parties explicitly incorporate rules that

empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and

---

[1]  We rely on and incorporate by reference that portion of the RD Defendants' supplemental brief that answers questions about Maurice's forum selection clauses.  If the Court transfers Maurice's claims, the Tigrent Defendants contend that the transfer should be to the Middle District of Florida where the Tigrent Defendants reside.

unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'"
*Washington v. William Morris Endeavor Entm't, LLC.*, No. 10 Civ. 9647 (PKC) (JCF), 2011 U.S.
Dist. LEXIS 81346, at *18 (S.D.N.Y. July 20, 2011) (quoting *Contec Corp. v. Remote Solution
Co.*, 398 F.3d 205, 208 (2d Cir. 2005)).

     *Washington* is the "reported case[]" that plaintiffs failed to find in which "the question of
enforceability under the *Green Tree / Amex* rule was permitted to be delegated to an arbitrator."
(*See* Pls.' Supp. Br. at 2.)  The plaintiff in *Washington* asserted employment discrimination
claims under federal and state statutes and sought to invalidate an arbitration agreement as
unconscionable.  2011 U.S. Dist. LEXIS 81346, at *1, *7.  The arbitration agreement, however,
contained an express delegation provision, stating that "[t]he Arbitrator, and not any federal,
state, or local court or agency, shall have the exclusive authority to resolve any dispute relating
to . . . enforceability."  *Id.* at *5-6.  The court concluded that this language "clearly and
unmistakably" delegated enforceability challenges to the arbitrator.  *Id.* at *17.  The Court also
found clear and unmistakable intent to delegate because Rule 6(a) of the incorporated AAA
Employment Arbitration Rules empowered the arbitrator to rule on arbitrability issues.  *Id.* at
*17-18.  Courts have identified NAF Rule 20(F) as akin to this AAA delegation rule in
determining that incorporated forum rules show clear and unmistakable intent to delegate.  *See
Howard v. Rent-A-Ctr., Inc.*, No. 1:10-CV-103, 2010 U.S. Dist. LEXIS 76342, at *9-10 n.2 (E.D.
Tenn. July 28, 2010).  As in *Washington*, both the express language of Crewe's Delegation
Provision and the incorporated reference to NAF Rule 20(F) confirm a clear and unmistakable
intent to delegate his unconscionability claims to the arbitrator. [2]

---

[2] Plaintiffs' reliance on *DiGiacomo v. Ex'pression Center for New Media, Inc.*, No. C 08-01768 MHP, 2008 U.S.
Dist. LEXIS 70099, at *20 (N.D. Cal. Sept. 15, 2008), is misplaced.  (Pls.' Supp. Br. at 2-3.)  That case was decided

                                              (continued…)

Because of the Delegation Provision, this Court cannot address Crewe's unconscionability challenges and should dismiss this lawsuit and compel arbitration. Neither in his Complaint nor in opposing this motion did Crewe "challenge[] the delegation provision specifically," and the Court is therefore bound to "treat it as valid under [FAA] § 2, and . . . [to] enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr.*, 130 S. Ct. at 2779. The Complaint does not even mention or quote the Delegation Provision's language. (*See* Compl. ¶ 38.) Crewe now makes a general compound assertion that "the arbitration agreement and its delegation provision" are unconscionable and would prevent vindication of federal statutory rights. (Pls.' Supp. Br. at 3.) Yet plaintiffs still do not specifically challenge the Delegation Provision even while challenging other provisions in Crewe's arbitration clause. (*Id.* at 7-11.) To the extent Crewe challenges delegation as part of contesting the arbitration agreement itself, the Supreme Court has held that, where the challenge is to the arbitration agreement "as a whole" but not specifically the delegation provision itself, the arbitrator must decide the issue of enforceability. *Rent-A-Ctr.*, 130 S. Ct. at 2779.

### B.      The Court Should Appoint An Arbitrator To Determine Unconscionability.

The answer to the Court's question about the proper sequencing of appointing an arbitrator and deciding unconscionability is found in the FAA itself. Crewe's arbitration clause instructs the parties to "agree on another binding arbitration forum" where, as in this case, NAF is unavailable. (May Decl. Ex. 1.) At oral argument, defendants' counsel represented that they have suggested an alternative forum and are amenable to considering others. (Hr'g Tr. at 9:12-

---

(continued…)

before the Supreme Court's decision in *Rent-A-Center*, which was emphatic that all enforceability challenges based on unconscionability claims that have been expressly delegated to an arbitrator cannot be decided by a court. *Rent-A-Ctr.*, 130 S. Ct. at 2779.

20.)  Plaintiffs' counsel, however, declared to the Court that "[t]here is not going to be an agreement" because Crewe will not agree to any alternative forum.  (*Id.* at 26:3, 27:1-29:3.)  As a result, Crewe has "fail[ed] to avail himself of [the] method" for "naming and appointing an arbitrator" and there is "a lapse in the naming of an arbitrator."  9 U.S.C. § 5.  In such circumstances, the FAA's directive is clear: "the Court *shall* designate and appoint an arbitrator." *Id.* (emphasis added); *see also* Fla. Stat. § 682.04; N.Y. C.P.L.R. § 7504.[3]  Pursuant to FAA § 5, therefore, the Court is first required to name and appoint a substitute arbitrator because Crewe's refusal to agree to an alternative forum results in a breakdown or lapse in the appointment method set out in the parties' agreement.

Under the FAA, the Court is not allowed to address Crewe's unconscionability challenges.  The FAA directs that courts "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  That directive is mandatory.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (citing FAA §§ 3, 4).  Thus, once the Court appoints an arbitrator pursuant to FAA § 5, it must delegate any unconscionability challenges to the arbitrator.

## C.    The Substitute Arbitrator May Apply NAF Rules Or Similar Public Codes.

NAF rules may apply in the eventual arbitral forum.  "[A]lthough a substitute arbitrator may not administer the NAF Code, a competent substitute arbitrator can apply the NAF's rules

---

[3] Plaintiffs' counsel's attempt at oral argument to distance Crewe from FAA § 5 is unfounded because Crewe's arbitration clause clearly shows that NAF is not central to the agreement.  (*See* Tig. Br. at 17-19.)  Specifically, the reliance on *In re Salomon Inc. Shareholders Derivative Litigation*, 68 F.3d 554 (2d. Cir. 1995), is inapposite.  The arbitration agreement in *Salomon* did not contain alternative forum language and the Court found that the designated forum was "central to the agreement," meaning that the arbitration could take place "*only* before the designated forum." *Id.* at 561 (emphasis in original).  (*See* Tig. Br. at 18 n.7.)

of procedure that public codes cover." *Wright v. GGNSC Holdings LLC*, 808 N.W.2d 114, 120

(S.D. 2011) (citing *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 31 (2011)).  *Wright* explains that it is

"of little significance" that NAF Rules provide for only NAF administration of the rules because

"[a] review of the NAF Code reflects that NAF administration involved what is commonly

provided by many arbitration services available today."  *Id.*  Indeed, the NAF Code itself

envisions a situation in which NAF Rules are applied but the NAF is not involved in

administering the arbitration.  NAF Rule 47(E) authorizes "arbitration pursuant to the [NAF]

Code" for claims and disputes brought by a party against the NAF itself even though "neither the

[NAF], nor its Director, nor any employee or agent of the [NAF] . . . shall administer the

arbitration."  (May Decl. Ex. 2.)

## II.    CREWE'S ARBITRATION CLAUSE IS NEITHER PROCEDURALLY NOR SUBSTANTIVELY UNCONSCIONABLE AND MUST BE ENFORCED.

There is no dispute that Florida law governs the question of unconscionability, requiring

a showing of both procedural and substantive unconscionability.  (*See* Pls.' Supp. Br. at 3.)

Crewe can show neither.  (*See* Tig. Br. at 21-24; Tig. Reply Br. at 3-5.)  There is no procedural

unconscionability because Crewe was given a "meaningful opportunity" to decide whether to

enter into the agreement.  *See Bland v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 256

(Fla. Dist. Ct. App. 2006).  He was advised to read the agreement before signing, was explicitly

made aware of the arbitration clause, and – most significantly – was afforded a three-day

cancellation right, which he deliberately chose not to exercise.  There can be no substantive

unconscionability because none of the provisions Crewe challenges are so "outrageously unfair

as to shock the judicial conscience," nor is Crewe's arbitration agreement one that "no man in his

senses and not under delusion would make."  *Id.*

### A.      Florida Law Governs Crewe's Unconscionability Arguments.

FAA § 2 provides that an arbitration agreement is valid, irrevocable, and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Thus, state common law contract defenses may render an arbitration agreement unenforceable, "*if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."  *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987).  When an arbitration agreement is challenged using a state law contract defense, such as unconscionability, a court must apply state law to determine whether an arbitration agreement is valid.  *See Cap Gemini Ernst & Young, U.S., LLC v. Nackel*, 346 F.3d 360, 365 (2d Cir. 2003).

To determine which state law is applicable, a federal court sitting in diversity should "apply the law of the forum state to determine the choice-of-law."  *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001).  Here, New York is the forum, and New York courts generally "apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction."  *See id.*  Plaintiffs agree that Crewe's agreement favors Florida law.  (Pls.' Opp'n  Br. at 9.)  Several defendants have contacts with Florida, and no contacts to another state at issue in this case predominate.  (Tig. Br. at 4-6.)  Thus, the Court should enforce the parties' choice of Florida law.

### B.      Crewe Must Show Both Procedural And Substantive Unconscionability.

Under Florida law, plaintiffs must show both procedural and substantive unconscionability to render a commercial agreement unenforceable.  *See, e.g.*, *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1321 (S.D. Fla. 2006); *Complete Interiors, Inc. v. Behan*, 558 So. 2d 48, 52 (Fla. Dist. Ct. App. 1990).  While Florida courts do not agree on the precise test for

finding unconscionability, it is undisputed that a plaintiff must show both procedural and substantive unconscionability to prevail.[4]

### 1.      Crewe Cannot Show Procedural Unconscionability.

Under Florida law, Crewe must show procedural unconscionability based on the "totality of the circumstances." *See Bland*, 927 So. 2d at 256. The court must consider factors such as the manner in which the agreement was made, the ability of the parties to understand the terms in dispute, the relative bargaining power of the parties, and the absence of a meaningful choice about whether to accept the contract. *See Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1999) (finding unconscionable new arbitration clause inserted into existing customers' monthly bill). The circumstances manifestly demonstrate that Crewe cannot show procedural unconscionability.

Crewe, a *cum laude* college graduate, was explicitly advised to "[r]ead the Agreement and the accompanying Terms and Conditions in their entirety before signing." (May Decl. Ex. 1.) The mere fact that his agreement was a form contract is not sufficient to demonstrate unconscionability. *See Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025-26 (Fla. Dist. Ct. App. 2005). He received "a copy of the Agreement and the Terms and Conditions." (May Decl. Ex. 1.) He initialed to confirm his "receiv[ing] the Terms and Conditions of this Agreement." (*Id.*) He also initialed next to a section that stated in bold letters that he was entering into a "legally binding agreement" and that alerted him in bold, capital letters to the existence of the arbitration clause. (May Decl. Ex. 1.)

---

[4]  The Eleventh Circuit has certified to the Florida Supreme Court the question of whether Florida courts should "consider either procedural or substantive unconscionability independently and conclude their [unconscionability] analysis if either one is lacking" or whether courts should instead "evaluate both procedural and substantive unconscionability simultaneously in a balancing or sliding scale approach." *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1143-44 (11th Cir. 2010). Under either approach, Crewe can prevail only by showing both procedural and substantive unconscionability.

But above all else, Crewe had a meaningful choice about whether or not to enter into the agreement. He was granted an express cancellation right that enabled him to "cancel this transaction at any time prior to midnight of the third business day after the date of this transaction." (*Id*.) He was given a copy of a separate Notice of Cancellation form, instructing him on how to effect a cancellation. He deliberately chose not to exercise that cancellation right. (Tig. Br. at 21-22.) Crewe cannot claim procedural unconscionability after failing to "obtain further guidance about or reconsider [his] decision during the revocation period." *See Bland*, 927 So. 2d at 256. He also cannot try to salvage his deficient procedural unconscionability showing by claiming after the fact that he signed the contract without actually reading it, as this is not a defense under Florida law. (*See* Tig. Reply Br. at 4-5 (citing *Allied Van Lines, Inc. v. Bratton*, 351 So. 2d 344, 348 (Fla. 1977).)

### 2.   Crewe Cannot Show Substantive Unconscionability.

Nor can Crewe show substantive unconscionability, which, under Florida law, arises only when contractual terms are "so outrageously unfair as to shock the judicial conscience," and the agreement is one that "no man in his senses and not under delusion would make . . . and  . . . no honest and fair man would accept." *See Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284-85 (Fla. Dist. Ct. App. 2003); *Belcher v. Kier*, 558 So. 2d 1039, 1044 (Fla. Dist. Ct. App. 1990).

In their supplemental brief, plaintiffs argue for the first time that there is substantive unconscionability because Crewe's arbitration clause directs that the arbitration "shall be held by submission of documents, by telephone or online" and does not provide for an "in-person hearing." (Pls.' Supp. Br. at 7-8.) What plaintiffs neglect to mention is that, like in-person hearings, the telephonic or online hearings are "participatory hearings" pursuant to NAF Rule 2(T)(2). (May Decl. Ex. 2.) All of them are "proceeding[s] in which an Arbitrator receives

testimony or arguments and reviews documents or property to render an Order or Award." (*Id.*) They differ only in terms of how the participants appear. Crewe is afforded notice and the opportunity to be heard no matter the type of participatory hearing used. The one seventy-year-old case plaintiffs rely on involved an entirely different situation in which a court set aside as void an arbitral award that was rendered without notice, let alone a hearing. (Pls.' Supp. Br. at 8 (citing *Citizens Bldg. of W. Palm Beach v. W. Union Tel. Co.*, 120 F.2d 982, 984 (5th Cir. 1941)). Similarly, while plaintiffs claim that the NAF Rule 34(B) limits Crewe's hearing to 60 minutes because it is for a minimal sum, they neglect to inform the Court that Rule 34(B) actually states "a Hearing session is scheduled for the following length of time, *unless more time or sessions are selected.*" (May Decl. Ex. 2 (emphasis added).) Simply put, Crewe's challenge to the in-person hearing format fails because it is factually inaccurate.

Crewe also cannot claim substantive unconscionability merely because of the existence of the Class Action Waiver. The U.S. Supreme Court has affirmed the legitimacy of these waivers, explaining that they facilitate lower costs, faster resolution, and less procedural complexity. *See AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1748-51 (2011). Moreover, the Eleventh Circuit has made clear that the FAA preempts any Florida decisions holding class action waivers to be void against public policy by limiting exposure to liability. (*See* Tig. Br. at 23 (citing *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1207 (11th Cir. 2011).) As *Concepcion* made clear, "state rules mandating the availability of class arbitration based on generalizable characteristics of consumer protection claims – including that the claims predictably involve small amounts of damages, that the company's deceptive practices may be replicated across large numbers of consumers, and that many potential claims may go unprosecuted unless they may be brought as a class – are preempted by the FAA." *Cruz*, 648

F.3d at 1212 (citing *Concepcion*, 131 S. Ct. at 1753) (quotations omitted).  Thus, plaintiffs

cannot argue that Florida law "invalidate[s] the class waiver simply because the claims are of

small value, the potential claims are numerous, and many consumers might not . . . pursue their

potential claims absent class procedures" since "such a state policy stands as an obstacle to the

FAA's objective of enforcing arbitration agreements according to their terms, and is preempted."

*Id.* at 1212-13.[5]

Finally, plaintiffs fail to show that any other provisions in Crewe's arbitration clause are

so unfair that "no man in his senses would make" such an agreement.  The Costs Provision is

imposed upon both parties equally and fairly, allowing the "prevailing party" – whichever party

that may be – to recover "all reasonable costs" and attorney's fees.  (May Decl. Ex. 1.)  And

Crewe's arbitration clause does not unfairly limit damages available under FDUTPA.  *See Orkin*

*Exterminating Co., Inc. v. Petsch*, 872 So. 2d 259, 263 (Fla. Dist. Ct. App. 2004).  In *Orkin*, the

arbitration clause limiting defendant's liability to "the amount paid by [the plaintiff], plus his

fees and costs" was found enforceable.  *Id.* at 262-63.  The Court stated that FDUTPA allows a

consumer to recover only actual damages plus attorney's fees and court costs but not "special,

consequential, and incidental damages."  *Id.* at 263 (citing Fla. Stat. § 501.211); *accord Fonte*,

903 So. 2d at 1025.  So too here, there is no unfairness in the fact that Crewe's arbitration clause

limits the award to actual damages, plus attorney's fees and costs, in accordance with FDUTPA.

*See* Fla. Stat. § 501.211(2); *Orkin*, 872 So. 2d at 263.  Therefore the terms of Crewe's arbitration

clause are not unconscionable and must be enforced.

---

[5]  In response to question 1(d) of the Court's Order, even if the Court were to deem the class action waiver
unenforceable, "the parties cannot be forced to arbitrate disputes in a class action arbitration unless the parties agree
to class action arbitration."  *Amex III*, 667 F.3d at 213.

III.   **THE VINDICATION OF FEDERAL STATUTORY RIGHTS' DOCTRINE DOES NOT APPLY TO CREWE'S CLAIMS.**

Recognizing that they cannot overcome the Delegation Provision in Crewe's arbitration clause nor demonstrate unconscionability under Florida law, plaintiffs resorted at oral argument and in their supplemental brief to refashioning this case as one involving the vindication of federal statutory rights – even though the Complaint is based on diversity jurisdiction and alleges only state law claims, all but one of which are non-statutory.  Plaintiffs make this incongruous leap in an effort to exploit the Second Circuit's decisions about the arbitrability of statutory antitrust claims in the recent *Amex* cases.[6]  But *Amex* and the vindication of federal statutory rights analysis do not apply to Crewe's claims as a matter of law and fact.

A.   <u>**Vindication Of Federal Statutory Rights Analysis Does Not Apply Because Crewe Alleges No Federal Statutory Claims.**</u>

"Vindication of statutory rights analysis is the method of analysis proposed by the Supreme Court in *Mitsubishi* for addressing whether an arbitration clause will be enforced *where the dispute implicates a federal statute*."  *Amex IV*, 2012 U.S. App. LEXIS 10815, at *4 (citing *Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)) (emphasis added).  Bereft of any substantive federal statutory claims, plaintiffs cleverly try to argue that Crewe's Count I request for declaratory relief is made pursuant to a federal statutory procedure, and, thus, subject to the vindication of rights analysis.  In *Mitsubishi* itself, however, the Supreme Court made clear that the analysis focuses on substantive rights, not statutory procedures.  "By agreeing to arbitrate a statutory claim, a party does not forgo the *substantive*

---

[6]  The Second Circuit has reconsidered its decision in *In re American Express Merchants' Litigation* several times. (Pls.' Supp. Br. at 1 n.1.)  The *Amex I* decision in 2009 was affirmed upon reconsideration in 2011 in *Amex II*.  *In re Am. Express Merchs. Litig. (Amex I)*, 554 F.3d 300 (2d Cir. 2009); *In re Am. Express Merchs. Litig. (Amex II)*, 634 F.3d 187 (2d Cir. 2011).  The same decision was reconsidered in 2012.  *In re Am. Express Merchs. Litig. (Amex III)*, 667 F.3d 204 (2d Cir. 2012). The Second Circuit recently denied rehearing *en banc*.  *In re Am. Express Merchs. Litig. (Amex IV)*, No. 06-1871-cv, 2012 U.S. App. LEXIS 10815 (2d Cir. May 29, 2012).

*rights afforded by the statute*; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi*, 473 U.S. at 628 (emphasis added). The doctrine safeguards substantive rights under federal statutes such as Securities Acts, RICO, and the Sherman Act as claims that "can be appropriately resolved through arbitration." *Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000); *see also Amex III*, 667 F.3d at 210 (arbitration of "plaintiffs' *substantive* antitrust claims.")

Furthermore, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, does not invest plaintiffs with any federal rights. The Declaratory Judgment Act does not "provide an independent cause of action. Its operation is procedural – to provide a form of relief previously unavailable." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). It is only where the plaintiff already has a distinct "substantive claim of right to such relief" that a court can issue a declaratory judgment. *Id.*; *see also Artimus Const. Inc. v. U.S. Fid. & Guar. Co.*, No. 11 Civ. 1123 (PKC), 2011 U.S. Dist. LEXIS 49291, at *3 (S.D.N.Y. May 9, 2011) (the Act "create[s] an opportunity, rather than a duty."). And even were the Act somehow to grant Crewe a federal right, his arbitration clause does not preclude declaratory relief. NAF Rule 20(D) expressly provides that the arbitrator "may grant any legal, equitable or other remedy or relief provided by law" and that such "remedies or relief cannot be unlawfully restricted." (May Decl. Ex. 2.) Thus, the arbitrator can declare the arbitration clause enforceable or not, thereby vindicating in arbitration the supposed "statutory right" Crewe seeks in Count I.

### B. Crewe's Claims Can Be Vindicated In Arbitration.

Even if the vindication of federal statutory rights analysis could be extended to Crewe's state law claims – and it cannot – Crewe has not (and cannot) show that his claims will not be vindicated in arbitration. Plaintiffs primarily claim that Crewe is "deterred from reaching an arbitrator by the prohibitive costs." (Pls.' Supp. Br. at 2). By "seek[ing] to invalidate an

arbitration agreement on the ground that arbitration would be prohibitively expensive," Crewe

"bears the burden of showing the likelihood of incurring such costs." *Amex III*, 667 F.3d at 217

(quoting *Amex I*, 554 F.3d at 315 and *Green Tree*, 531 U.S. at 92).  He cannot meet that burden.

 Unlike in *Green Tree*, Crewe's arbitration clause is not silent on the issue of costs.  *See*

*Green Tree*, 531 U.S. at 89.  His arbitration would be subject to the fee structures of the NAF or

another arbitral forum agreed to by the parties, such as JAMS or AAA.  All of these fora make

special accommodations for consumers.  *Id*. at 95 (Ginsburg, J., concurring in part and dissenting

in part).  Under the NAF fee schedule, Crewe's costs would be a "Filing Fee [of $19] and one-

half the fee for a Participatory Hearing selected by the Consumer up to a total of $250."

(Declaration of Daniel D. Edelman, annexed hereto, Ex. A.)  JAMS similarly limits consumer

costs, with "the only fee required to be paid by the consumer [being] $250."  (Marchese Decl.

Ex. A at No. 7.)  AAA also has supplementary rules specific to consumers.  For small consumer

claims, "the consumer is responsible for one-half the arbitrator's fees up to a maximum of $125."

(Edelman Decl. Ex. B at Rule C-8.)  These consumer-friendly arbitration fees are certainly

cheaper than the $350 filing fee Crewe has already paid – never mind the attorney's fees he has

incurred – to initiate this court action.  (Edelman Decl. Ex. C.)

 Crewe also has not – and cannot – show that he would be forced to bear any prohibitive

expert or other expenses associated with complex claims such as the antitrust allegations in *Amex*.

There, the plaintiffs showed that an individual plaintiff would have "out-of-pocket costs" for

expert economic analyses exceeding "several hundred thousand dollars, and might [even] exceed

$1 million."  *Amex III*, 667 F.3d at 218.  The defendant "brought no serious challenge" to the

evidence of these expenses.  *Id*.  Crewe's simple contract and tort claims do not require complex

economic analyses or any expert testimony at all, and so he cannot show that he must incur

additional and prohibitive expenses.  He certainly cannot show that the entry costs are so prohibitive as to deter him from bringing his claim in the first place.  Plaintiffs' counsel may decide that without a class action there is no "adequate incentive" to pursue Crewe's claims or that "the small amount of damages was not worth his trouble," but that does not mean that Crewe cannot pursue his claims.  *Amex IV*, 2012 U.S. App. LEXIS 10815, at *7.

Indeed, by its terms, Crewe's arbitration clause enables him to "recoup his costs" and thus his arbitration clause must be upheld as valid.  *See Amex IV*, 2012 U.S. App. LEXIS 10815, at *7-8; *see also Green Tree*, 531 U.S. at 92.  The arbitration clause provides that "the prevailing party . . . [may] obtain all reasonable costs, including its reasonable attorney fees." (May Decl. Ex. 1.)  Thus, Crewe has a way to recover costs and attorney's fees.  In such circumstances, where "the individual damages awards available to any single plaintiff [are] small," there is no concern of economic feasibility if the "fee-shifting provisions ensured that a damage plaintiff could be made whole."  *Amex IV*, 2012 U.S. App. LEXIS 10815, at *7.

## CONCLUSION

For the foregoing reasons and those stated in the Tigrent Defendants' original and reply briefs, the Complaint must be dismissed and arbitration compelled as to Crewe's claims.  The Tigrent Defendants are entitled to all reasonable costs and attorney's fees.

Dated:       New York, New York
             June 6, 2012

                         **CROWELL & MORING LLP**

                         By  /s/ Daniel D. Edelman
                              Daniel D. Edelman

                         590 Madison Avenue
                         New York, New York 10022
                         (212) 223-4000

                         *Attorneys for Defendants Rich Dad Education, LLC, Tigrent Inc., Tigrent Learning Inc., Tigrent Brands Inc., Christopher Briggs, and Scott Stewart.*